[Civ. No. 5709. Second Appellate District, Division One.—October 31, 1927.]

THE FIDELITY AND CASUALTY COMPANY OF NEW YORK (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and CLYDE RHONE, Respondents.

Jennings & Belcher for Petitioner.

G. C. Faulkner for Respondent Industrial Accident Commission.

YORK, J.—On writ of review of a finding and award by the Industrial Accident Commission rendered in favor of

one Clyde Rhone, and against petitioner as insurance carrier of A. M. Thompson.

The sole question raised is whether or not Clyde Rhone was an employee of Thompson, alleged to be the contractor in charge of the work. It is admitted that Thompson was a supervising contractor and "builder," the terms of whose contract are hereinafter stated. He denies that he ever employed Clyde Rhone and there is evidence to show that he had no direct knowledge of the employment of Rhone until he received a time-card and made out a check in Clyde Rhone's favor for the amount of this card.

At the time of the injury Rhone was working on certain iron grill work and was injured by a piece of steel or iron flying from the hammer and anvil to his eye and lodging in the eye, which later necessitated the removal of the eye itself.

Petitioner's claim of nonliability rests upon the further claim that Rhone was not an employee of Thompson, and that Louis E. Plummer, the owner of the job at Fullerton for which the iron work was being prepared, was paying Thompson only a fixed sum for his services in building the house, and was furnishing Thompson the money to make payments for material and labor as the work progressed in sums of approximately $1,000 at a time. Although in his answer Thompson denies that the applicant in the proceedings before the Industrial Accident Commission had received a check for the sum of $15.41 "or for any other sum from this answering defendant as his employer," yet Mr. Plummer testified at the hearing: "Q. (By referee.) How did this grill work happen to be turned over to the boys in the structural iron course of the school? A. At my suggestion, to Mr. Thompson. Q. Who took up the matter with Mr. Hart, you, or Mr. Thompson? A. I took the matter up with him informally; all plans, drawings, etc., were submitted to him by Mr. Thompson. . . . Q. Mr. Plummer, who paid for the materials that went into the iron work on your job? A. Mr. Thompson." Hart was acting as foreman of this work, under supervision of Thompson.

Mr. Plummer's testimony as to the contract and its terms is best set forth in the exhibit following, which he testified fully set out the only agreement with contractor Thompson:

"Defendant Plummer's Exhibit 1.

"HARRY KENNETH VAUGHN

"Architect

"736 So. Flower St., Los Angeles

"30th November, 1925.

"Mr. Louis E. Plummer,

"Fullerton Union High School,

"Fullerton, California.

"Dear Louis:

"The following is a confirmation and memo of changes and suggestions regarding the drawings and specifications, also methods of procedure pertaining to the building of your residence.

"Decision was made to have the house built by Mr. A. M. Thompson. He was to charge $400.00 for his services and equipment and in addition to receive $1.00 per hour for the time he is actually engaged as a workman or mechanic on the building.

"Mr. Thompson's estimated cost was $12,593.00 complete, as per plans and specifications, exclusive of painting. The foregoing estimate is to be reduced by certain revision and changes in the drawings and specifications.

"Before ordering any material, the builder is to submit to the owner for his approval the quantity of materials, the estimated cost in unit and in total, and the names of the person or persons or firms from whom the purchase is to be made.

"Portions of the material and all of the labor are to be paid by check by the contractor. At a time agreed upon, the contractor is to submit an itemized statement with the bills to the owner. Upon approval of the same the owner is to deposit money to the contractor's credit for the payment of the labor and material called for in the statement, or an approved revision of the same.

"Permit for the building to be taken out for the amount of $10,000, by the contractor.

"Very faithfully,

"(Signed)   HARRY K. VAUGHN."

It was stipulated at the hearing that Clyde Rhone received between June 12, 1925, and July 12, 1925, the total sum of $116.74, this being at the rate of thirty-five cents per hour,

and it was further stipulated that such sum should be considered as the applicant's earnings as an ornamental iron worker during that period. The evidence shows that the $15.41 received by Rhone from Thompson was paid by Mr. Thompson out of amounts paid to him to his credit as such contractor for the purpose óf paying ''for the labor and material called for in the statement, or approved revision of the same.''

The Commission has made its direct finding on the foregoing evidence and other evidence taken which showed in detail the nature of the work to be done, and the persons ordering the same and the supervision or exercising of supervision over the work and the employee Rhone, and has made a direct finding that at the time Clyde Rhone was injured he was performing work as an employee of Thompson and was to be paid by Thompson as the contractor supervising the entire work.

It is plain that Rhone was the employee of someone. He was hired directly by Hart, but the evidence shows that Hart was an employee and in engaging the services of Rhone was acting as such employee. Both of them were working for Hart's employer, and the liability for injury to Rhone is necessarily the liability of that employer. Under the terms of the building contract as evidently understood and acted upon by the several parties, the Commission was justified in finding that the men working under Thompson, on the jobs necessary to carry out his agreement, were his employees.

The award is affirmed.

Conrey, P. J., and Houser, J., concurred.

An application by petitioner to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 29, 1927.