[Civ. No. 6601. Second Appellate District, Division One.—September 27, 1929.]

G. H. JOHNSON et al., Petitioners, v. DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF INDUSTRIAL ACCIDENTS AND SAFETY, and C. E. TYLER et al., Respondents.

F. Britton McConnell for Petitioners.

G. C. Faulkner for Respondents.

HOUSER, J.—The purpose of this proceeding is to review an order of award of compensation made by the respondent tribunal, known as Department of Industrial Relations, Division of Industrial Accidents and Safety, to one Tyler for injuries sustained by him in the course of his employment.

From the petition for a writ of review and the return thereto, briefly, but so far as are here essential, the facts which said respondent tribunal was justified in assuming were established by the evidence, appear to be that one Johnson, who was a building contractor, was engaged in the construction of a house which, in due course and without delay, he desired to have shingled. To that end he made an effort to secure the services of a man who was engaged in that sort of work but who, owing to press of business, was unable to give the matter his immediate attention. However, in order to accommodate Johnson, he communicated with another shingler by the name of Woodward. It

appears that although Woodward also was engaged on another shingling job, and consequently believed himself unable to devote his personal attention to the proposed Johnson job, he did secure the immediate services of a third shingler named Tyler. It so happened that after Tyler had commenced work on the job, Woodward found that temporarily he could spare some time from the shingling job on which he was engaged, and consequently, during the first day of the employment, he and Tyler worked together on the Johnson job. Johnson ordered, or at least requested, that the house be shingled as soon as possible. Accordingly, Woodward endeavored to get other men to assist in the work, and succeeded in doing so on the next day after he and Tyler had started the job. So far as the employment was concerned, Tyler had no personal communication with Johnson. The compensation expected for the labor was for no definite total amount, but was understood as having been fixed at the rate of ''$1.35 a thousand (shingles) and three cents a foot for cut work.'' On previous similar jobs on which Woodward had worked for Johnson, the manner in which payment had been made was that Johnson paid Woodward the total amount due for labor on the job and out of such sum Woodward paid himself and any men whom he had secured to assist in the work, less a commission of ten per cent usually charged by Woodward to such men for his services in procuring the employment for them. However, since the particular job had been taken at a low rate of compensation, and as Woodward personally expected to do no work on it, he had no intention of charging, and did not charge, Tyler or either of the other men any commission for getting the employment for them. As was testified by Woodward:

''Q. How much were you going to take on this job? A. Not a thing.

''Q. Why was that? A. Well, it had been no trouble to me other than a telephone call to get it. I didn't expect to handle the job myself. I expected to turn it over to the men that worked on it.''

It also appeared that Johnson assisted in constructing a ladder for the use of the shinglers; that he furnished the shingles and the necessary nails; that if the work was not properly done Johnson would not be required to pay for it;

and that, although other than directing where the work should be commenced and requesting that the job be finished as soon as was possible, he gave no orders in connection with the job, if at any time during the progress of the work he so desired, he had the right, without liability therefor, to terminate the employment of Woodward, Tyler or any other man employed on the job. Relating to the right on the part of Johnson to discharge Woodward from the employment, Woodward testified:

"Q. Has anybody any control over you? A. Mr. Johnson.

"Q. Could he discharge you? A. Absolutely.

"Q. What time of day? Could he discharge you any time of day? A. Any time he wanted to.

"Q. Could you turn around and ask for the money for the rest of that job? A. No sir. Not under the conditions that the job was being done."

On the second day of his employment and in the course thereof, Tyler was injured, and the shingling job was completed by the two other men whom Woodward had secured to assist in the work. Thereafter, on application of Tyler, an order of award of compensation was made by the respondent tribunal in favor of Tyler and against the insurer of Johnson. By the same order, Woodward was discharged from liability.

So far as are here material, the findings of fact upon which the order in question was made are as follows:

"C. E. Tyler, applicant, while employed as a shingler . . . by G. H. Johnson, sustained injury occurring in the course of and arising out of his employment, . . . Chas. C. Woodward was not the employer and is entitled to be dismissed and discharged. . . . "

Petitioners herein attack the award and the findings on the ground that the respondent tribunal acted in the premises without and in excess of its power and authority, and that the evidence adduced and the proof made in the matter did not justify or support the findings of fact to which reference has been had.

Obviously the paramount question to be determined is whether from the facts and surrounding circumstances the shingler Woodward, who procured the services of Tyler, was an independent contractor. If Woodward was not an independent contractor it would follow that, within the pur-

view of the provisions of section 8 (b) of the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 831, as variously amended), for the injuries sustained by him, Tyler was entitled to recover compensation from Johnson or his insurer. ▮▮ The determinative words of the statute are as follows: "Any person rendering service for another, other than as an independent contractor, or as expressly excluded herein, is presumed to be an employee within the meaning of this act. The term 'independent contractor' shall be taken to mean, for the purposes of this act: Any person who renders service, other than manual labor, for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished." (Stats. 1917, p. 835, sec. 8 (b).)

The case of *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 Pac. 570, 571], is a "deadly parallel" with the case here under consideration. It is so thoroughly considered not only as to the facts of the particular case (which are nearly identical with those in the instant case), but also with reference to pertinent authorities, that it would be a waste of time and energy on the part of the members of this court to attempt any elaboration upon the principles of law governing the situation. Among other things, it is there said:

▮▮ " . . . Whether or not the relation of employer and employee existed in this case, under the oral contract entered into, *is a question of mixed law and fact, to be proved like any other question.* The finding of the Commission, in effect, that the relation existed between Hillen and Downing is binding on this court. (*Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.*, 180 Cal. 497, 499 [181 Pac. 788].) Unless there is such an entire absence of evidence in the record as to render the finding unreasonable, or in excess of the powers of the Commission, the court is not empowered to set it aside. (*Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587, 598 [200 Pac. 17].) *The award of the Commission* may be annulled only if there is no substantial evidence in support of its findings. (*Press Pub. Co.* v. *Industrial Acc. Com.*, 190 Cal. 114, 124 [210 Pac. 820].) . . .

▮▮ *"A workman who is paid wages by the piece or quantity comes within the provisions of the Workmen's Compensation Act* the same as one who is paid by the

day. Wages may be measured by time, by the piece, or by any other standard. (Citing authorities.) ▮ One of the best tests to determine whether the relation is that of an independent contractor or that of employer and employee is the *right of control*. It is not the fact of actual interference with the control, but the *right to interfere,* that makes the difference between an independent contractor and a servant or agent. (Citing authorities.) It is not a question of interference, or non-interference, not a question of whether there have been suggestions, or even orders, as to the conduct of the work; but a question of the *right to act,* as distinguished from the act itself or the failure to act. (Citing authorities.) The evidence in this case fully supports the conclusion that Hillen, through his superintendent of construction or foreman, could at any moment direct the details of the work done by Downing. On occasions that was done. Coincident with the right of control is the right of either the employer or the employee *to terminate the relation without liability*. This is but another way of stating the rule, for *the right to immediately discharge involves the right of control*. (Citing authorities.) . . . There is nothing in the record to indicate that Downing was not free at all times to discontinue the work without legal liability, and, as to the right of Hillen to discharge him at any time, he testified that if he was discharged the builder 'would pay (him) for what (he) put on and that would be the end of it.' "

See, also, *Press Publishing Co.* v. *Industrial Acc. Com.,* 190 Cal. 114 [210 Pac. 820] ; *Archbishop* v. *Industrial Acc. Com.,* 194 Cal. 660 [230 Pac. 1] ; *Montezuma Mountain Ranch School* v. *Industrial Acc. Com.,* 201 Cal. 603 [258 Pac. 84] ; *Fidelity & C. Co.* v. *Industrial Acc. Com.,* 86 Cal. App. 445 [260 Pac. 928].

It is clear that each of the principles of law hereinbefore set forth and announced in the Hillen case has direct application to the facts in the instant case.

The award is affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 25, 1929, and an

application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 25, 1929.

All the Justices concurred.