[S. F. No. 14085. In Bank.—May 1, 1931.]

O. W. BECKER et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, etc., and ADELE L. ROGERS, Respondents.

I. F. Chapman for Petitioners.

Edward O. Allen for Respondents.

THE COURT.—*Certiorari* to review an award of the Industrial Accident Commission in favor of Adele L. Rogers, surviving widow of Francis N. Rogers, deceased. The Com-

mission found that "Francis N. Rogers, 67, now deceased, while employed jointly as a messenger on or about April 1, 1930, at San Francisco, California, by O. W. Becker and Charles R. Holton, sustained injury arising out of and in the course of his employment when struck by an automobile at Mission and Farragut streets, San Francisco, proximately resulting in his death". The Commission also found "that the employment in which the deceased was engaged at the time was not casual within the meaning of section 8 (c) of said act" and that "the employment in which the deceased was engaged at the time was not that of an independent contractor". The Commission further found that neither of the employers was insured, and "all parties were then subject to the provisions of the Workmen's Compensation, Insurance and Safety Act of 1917". Upon these findings an award was made in favor of the widow of Rogers and against both Becker and Holton in the sum of $2,667.60, payable weekly, and burial expenses.

Petitioners challenge the findings of the Commission, particularly with reference to the relationship existing between Rogers and each of the petitioners, and insist that the findings are not justified by the uncontradicted evidence in the case. There appears to be little contradiction in the evidence adduced and no real controversy as to the actual facts of the case. The question presented, therefore, is whether or not the inferences, embodied in the findings of the Commission, are reasonably deducible from the evidence presented at the hearing before the Commission.

The facts are as follows: Francis N. Rogers, who was sixty-seven years of age, and had previously been employed as an accountant by the Bethlehem Steel Works, was employed as a general messenger for approximately a year prior to his death, by O. W. Becker, who was engaged in the fire insurance brokerage and mortgage loan business in the Monadnock Building, San Francisco. His duties as such consisted principally of calling for and delivering insurance policies and other papers in various offices in San Francisco. This employment was part time employment only, beginning at 8 o'clock in the morning and continuing until the middle of the afternoon. He was paid on the basis of $3 per day, that is to say, 75¢ for a quarter of a day; $1.50 for half a day, etc. At the conclusion of each

day's service, Becker and Rogers would agree as to what fraction of the day Rogers had worked and at the end of the week, on Saturday, Becker would pay to Rogers the amount due to him. Rogers' employment with Becker took him frequently to the office of Charles R. Holton, an attorney at law, as Holton performed notarial work for Becker and it was frequently necessary for Rogers to take papers to Holton's office, which was in the Bank of America Building on Market Street. In February, 1930, Holton undertook to do notarial work for the Hibernia Bank at the noon hour, and he employed Rogers to attend his office during the midday, while he, Holton, was absent from his office. The payment for this service, according to the testimony of Holton, was at the rate of 50¢ per hour, which payment sometimes amounted to $3 a week, sometimes $3.50, but never exceeded $4. On April 1, 1930 Rogers worked for Becker until 11:30 A. M., when he left Becker's office to get his lunch and go over to Holton's office. He returned from Holton's office to Becker's office about 1:30 P. M., as he had no other place to go, and remained there until about 3:00 P. M., reading the newspaper. About 3:00 o'clock Holton telephoned to Becker to ask him to send Rogers over to his office, as he had a summons which he wished Rogers to serve for him. Becker gave Rogers the message, at the same time asking him to pay taxes for a client of his at the city hall, saying, "These taxes—you were going to pay these taxes this morning, but you couldn't do it, and in passing by you had better pay these taxes before going to serve the summons." Rogers immediately went to Holton's office, where he procured the summons and left with the ostensible purpose of first paying the taxes of Becker and then serving the summons for Holton. According to the testimony of Holton, he gave Rogers no instructions with reference to the serving of the summons other than to make a notation of two possible addresses of one of the defendants on the back of the summons, and told Rogers he would pay him $1 for serving it. Rogers was instantly killed on his way to serve the summons after alighting from a street-car at the corner of Mission and Farragut Streets about two and a half blocks from the address of the defendant mentioned in the summons. A receipted tax bill and the change from the money given to him by Becker to pay the taxes were found

on his body, and it is evident, therefore, that he had gone to the city hall and paid the taxes and then taken a Mission Street car for the purpose of serving the summons.

The evidence relative to the terms of Rogers' employment and the quality of the relationship between him and the petitioners necessarily consisted almost entirely of the testimony of the petitioners for the reason that only Rogers and the petitioners were familiar with the actual terms of his employment. There was, however, also introduced in evidence the memorandum book taken from the body of Rogers after the accident, in which each day he had noted down with meticulous care the fraction of the day which he had been employed by Becker and Holton. In parallel columns he had put down the date, the fraction of day employed by Becker, the fraction of the day employed by Holton, and the total of each day's work, sometimes amounting to a whole day, and frequently amounting to three-fourths of a day. At the bottom of each page his earnings of the week were totaled and apparently figured on the basis of $3 per day, although in two instances when the amount totaled $4.50 from Holton, Rogers had crossed out that amount and substituted $4. This memorandum book furnishes a basis for arriving at the compensation awarded by the Commission, and the fact that no notation was made on April 1st may have some probative value as indicating that his employment by Becker had not been completed at 11:30 A. M.

Each of the petitioners seeks an annullment of the award upon a theory different and distinct from that advanced by his co-petitioner, and we will therefore discuss separately the contentions advanced by each petitioner. Holton resists liability on the ground that as respects the service of the summons he was not Rogers' employer, but that Rogers in the performance of this service was acting as an independent contractor. Becker admits that Rogers was a regular employee of his, but insists that the fatal injury did not arise out of and in the course of such employment for the reason that Rogers at the time of the fatal accident was not on a mission of Becker's employment, but was engaged solely in the performance of a service for Holton.

With reference to Holton, the question presented is whether an attorney is liable for an injury which may hap-

pen to an officer or some private person to whom he has delivered a summons for the purpose of having it served upon a defendant. In the present instance, Holton gave no specific instructions to Rogers as to how or when the service of the summons should be made. He agreed to pay Rogers $1 for making the service. He merely gave to Rogers the two possible addresses of the defendant to be served and Rogers had the right to adopt any means of travel which suited his convenience and was at liberty to act upon his own judgment in making the service of the summons. ■ An independent contractor has been expressly defined by section 8 (b) of the Workmen's Compensation Act to be "any person who renders service, other than manual labor, for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished". It seems clear that at the time of Rogers' fatal injury he was engaged in rendering service for a specific recompense for a specific result, under the control of his principal as to the result of his work only and not as to the means by which such result should be accomplished, and that this being so, there is no escape from the conclusion that he came within the above-quoted definition and that his status at that time was that of an independent contractor and not that of an employee.

We, of course, have in mind that the true test of the relationship of employer and employee is not the actual exercise of control, but the right to exercise control—not the actual interference by the employer with the manner and method of accomplishing the result, but the right to interfere. (*Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 Pac. 570]; *Johnson* v. *Department of Industrial Relations*, 101 Cal. App. 1 [281 Pac. 440].) But the existence of such a right is negatived by the very nature of the service to be performed and there are present no evidentiary factors, which, in our opinion, would warrant an inference that such a right was within the contemplation of either of the parties.

■ It is true that Rogers was employed by Holton to keep his office during the midday, but we cannot agree with the theory of the Commission that the hiring of Rogers by Holton for the particular service of serving the summons was "a part of the more general hiring of Rogers for the performance of miscellaneous services of a comparable

sort''. The evidence clearly demonstrates that the only duty which Rogers was obligated to perform as a part of his regular employment by Holton was to keep Holton's office during the noon hour when Holton was absent from the office and to keep a note of the clients who called in person or by phone. During the previous year, before he had been employed by Holton to keep his office, he had served two summons for Holton and each time he had received payment for that particular service. After he was employed by Holton to keep his office open he was never called upon as part of his employment to perform any errands for Holton. It cannot, therefore, we think, be truly said that the general hiring of Rogers by Holton was for miscellaneous services comparable to the serving of summons.

 We have also in mind the fact that, because Rogers was at the time of his death actually performing a service for Holton, the burden of proof rests upon the latter to establish that the former was an independent contractor. (*Hillen* v. *Industrial Acc. Com., supra.*) As we have said before, from the evidentiary facts adduced at the hearing before the Commission, we can see no escape from the conclusion that Rogers' status at the time of his death was that of an independent contractor. This being so, it necessarily follows that Holton has in fact sustained this burden. The award against Holton was, therefore, in our opinion, erroneous and should be annulled.

 In behalf of Becker it is urged that under no conceivable principle can it be held that he was liable for an injury to Rogers while the latter was on an errand for an entirely different employer and at a place far removed from the natural route to be followed in connection with the payment of the taxes and going home therefrom. The city hall in San Francisco, where the taxes were to be paid, is located on McAllister Street and Van Ness Avenue, and it appears that Rogers resided at 906 Steiner Street. In going to the address of the person upon whom he was to serve the summons it was necessary for him to proceed from the city hall in an opposite direction from that which he would have taken had he proceeded directly to his home after paying the taxes. There is no doubt but that Rogers was in the course of Becker's employment while he was on his way to the city hall to pay the taxes. We find no evi-

dence, however, upon which an inference can be properly predicated that after he had finished paying the taxes at the city hall and had alighted from a street-car preparatory to serving the summons for Holton, he was still in the course of his employment by Becker. It is wholly unnecessary for us to consider what would have been the situation had Rogers been injured after he had served the summons and was on his way home, for there is not the slightest doubt but that Rogers, at the time of the fatal accident, was on his direct way to the residence of the person upon whom he was to serve the summons for Holton. It is also unnecessary for us to consider what would have been the situation had he been injured while he was on his way to the city hall and before he had either paid the taxes or served the summons.

■ We are unable to agree with the theory of the Commission that Rogers was jointly employed by both Becker and Holton and that he was engaged upon a dual mission which was to be performed as a single excursion, and that at all times until his arrival home his errand was colored by the joint character of his errand and that Becker was liable although at the time of the injury Rogers was actually performing a service for Holton. If Rogers had been regularly employed by both petitioners to run errands, we could subscribe to this theory, but the evidence shows that the regular employment of Rogers by Becker and Holton was a separate and individual employment by each and that in the particular service of serving the summons for Holton, Rogers was acting as an independent contractor. This latter fact strongly negatives the theory, if it does not entirely eliminate it, that the *employment* by petitioners was a joint employment. The mere fact that each petitioner knew that Rogers was to perform a service for the other is not sufficient, in our opinion, to render the services a joint errand.

■ It is suggested that in order to sustain the award Becker may be considered to have retained the character of general employer while releasing his employee for the special work of Holton. We do not think the evidentiary facts warrant such an inference. In the first place, Becker's employment of Rogers was not a regular full-time employment, but was only for the fraction of each day that he had errands for Rogers to perform. The facts do not

indicate that Rogers was being "loaned" to Holton by Becker, and certainly he was not being "hired out" to Holton by Becker. Moreover, what we have already said with reference to the necessity for a right of control to constitute a person an employer applies also to a special employer, and negatives the conclusion that at the time of Rogers' death he was a special employee of Holton. (*Independence Indemnity Co.* v. *Industrial Acc. Com.*, 203 Cal. 51 [262 Pac. 757].)

It follows from what we have said that the award in the instant case was erroneous, and it is hereby annulled.