Argued at Pendleton May 4; reversed June 7, 1932.

# BROTHERS *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

(12 P. (2d) 302)

*Miles H. McKey,* Assistant Attorney General (I. H. Van Winkle, Attorney General, on the brief), for appellant.

*James Donald,* of Baker (Hallock, Donald & Banta, of Baker, on the brief), for respondent.

CAMPBELL, J. In February, 1929, D. B. Brothers, respondent was granted a permit by the Public Service Commission of Oregon to operate a Chevrolet truck as a Class 5 Motor Carrier and, as such, respondent registered with the Secretary of State and in all respects complied with the law regarding such class of Motor Carriers.

In July of 1929, Karl J. Stackland, a fruit grower of Union county, engaged respondent to haul certain freight with said truck, which consisted chiefly of hauling cherries from the Stackland Orchards near Cove to La Grande. There were several kinds of cherries in the lot to be moved.

As the cherries were gathered from the trees, they were immediately stored in a warehouse near the orchard and there made ready for transportation. Some of the cherries were carefully packed ready for refrigeration or shipment as fresh fruit. Some, referred to as lugs, were loosely packed and taken to the canneries.

Stackland told respondent when and where a load would be ready and informed him that he would give him as much hauling as he conveniently could. He also told respondent how to load the cherries so that they would not be injured by the jarring of the truck. He designated what cherries should first be hauled and where they should be delivered. He had respondent, on two occasions, haul some freight for other parties. On one occasion he told respondent to return from La Grande by way of Union and bring a load of empty boxes to the orchard at Cove. He also informed respondent that, in order to get his hauling, he would have to be on hand when the freight was ready. He also requested respondent to load his truck to its fullest capacity and not to carry any passengers. Re-

spondent claims that he was to be paid by the hour in accordance with his tariff on file with the Public Utilities Commissioner. Stackland asserts that respondent was to be paid by the load. However it amounted to practically the same price either way.

On July 30, 1929, while respondent was driving his truck from Stackland's orchard to La Grande with a load of cherries, a piece of loose canvas on the seat of the truck was blown by the wind in respondent's face, obscuring his vision and as a result he lost control of his truck and permitted it to run into a ditch, overturning it and injuring him.

For this injury, he filed a claim for compensation under the Workman's Compensation Law with the State Industrial Accident Commission. His claim was rejected on the grounds that being a common carrier, he was an independent contractor and therefore not subject to the act. He thereupon appealed to the circuit court where the cause was tried to a jury which returned a verdict in his favor.

Defendant appeals.

There appears to be no real contradiction in the evidence, and no controversy as to the actual facts of the case.

When all the evidence was submitted, the defendant moved for a directed verdict in favor of the defendant on the grounds that plaintiff being a common carrier, was not an employee as defined by the Workman's Compensation Law in performing the services required of him as a common carrier.

The court overruled the motion. The defendant saved an exception, and assigns the court's ruling as error. This is the only question presented by the record herein.

When plaintiff took out a permit as a Class 5 Motor Carrier, the law imposed upon him certain duties and obligations.

"Carriers by Motor. 'Motor Carrier' means every corporation and person, * * * owning, controlling, operating or managing any motor vehicle used in the business of motor transportation of and for the general public and not operating exclusively within the limits of an incorporated city or town.

" 'Motor transportation' means the transportation of persons or property, or both, for compensation, over any public highway in this state." Oregon Code 1930, 55-1301.

"All motor carriers, as the term motor carrier is defined in this act, are hereby declared to be common carriers." Id. 55-1302.

"No motor carrier * * * shall conduct the business of motor transportation on or over any public highway in this state, except in accordance with the provisions of this act." Id. 55-1303.

"* * * Class 5. Freight motor carriers operating on call not exclusively within the municipal boundaries of incorporated cities or towns, and known as anywhere-for-hire carriers." Id. 55-1307.

"A common carrier has been defined to be one who undertakes, for hire or reward, to transport the goods of such as choose to employ him, from place to place. The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently; in order to impress upon one the character and impose upon him the liabilities of a common carrier, his conduct must amount to a public offer to carry for all who tender him such goods as he is accustomed to carry." 4 R. C. L. 546.

"A common carrier is one who undertakes, for hire or reward, to transport the goods of those who choose to employ him, from place to place. (Story on Bailments, Sec. 495; Lawson on Contracts, Sec. 1, 2; Kent's Comm. 598; 1 Smith's Lead. Cas. 312). At

common law, a common carrier was bound absolutely to safely convey all goods intrusted to his care * * * A common carrier's employment is public, and necessarily involves the performance of public duties. His duty to carry safely the goods or property intrusted to his charge is an obligation imposed upon him by law. * * * It is true, as Mr. Justice Bradley said: 'A common carrier may, undoubtedly, become a private carrier, or a bailee for hire, when, as a matter of accommodation or special engagement, he undertakes to carry something which is not his business to carry.' (Railroad Co. v. Lockwood, 17 Wall. 357 [21 L. Ed. 627])." Honeyman v. Ore. R. R. Co., 13 Ore. 352 (10 Pac. 628, 57 Am. Rep. 20).

"It is admitted that the service was rendered under a contract with plaintiff; but plaintiff contended that defendant cannot by contract avoid the performance of its duties as a common carrier, which is true if the service was one required of it as a common carrier." Schanen-Blair Co. v. South. Pac. Co., 68 Or. 106 (136 P. 886).

There is no allegation in the pleadings nor any evidence in this case tending to show that respondent, while hauling the freight for Stackland, was engaged in carrying something it was not his duty as a common carrier to haul. The fact that he was carrying it successfully, demonstrated that he had the necessary equipment.

The shipper had the right to dictate what particular freight was first to be moved and where it should be delivered. The shipper also had the right to insist that the truck be loaded to its fullest capacity. This would be true whether the hauling was to be paid for by the hour or by the load. The shipper could not compel respondent to overload his truck. Respondent, in attempting to show that he had a special agreement

with Stackland, not within his duties as a common carrier, was asked to detail the agreement under which he worked. He testified:

"A. Well, there was no certain time,—I had to work no certain time; there was not anything said about that. I was to haul cherries and he wanted me to haul cherries, and I was to work for him no certain time that I know of.

"Q. What about the size of the load you put on there, Mr. Brothers?

"A. Well, I put on, when I loaded with lugs,—the last lug load I hauled was about 252 lugs; and when I started in hauling,—the first hauling, I didn't haul that many. I told him that I didn't want to haul but a ton and a half a load, and I kept building the load up until I got two tons, and I told him that I would not haul any more than that.

"Q. Now * * * would Mr. Stackland give you orders what you were to do and how you were to do it?

"A. Yes.

"Q. Well, can you detail some instances there?

"A. Well, he sometimes,—he had a door on the south side of his shed and one on the west side. Sometimes I would back up there to that door,—a few times I did,—I don't know just how many times to the south door, and the lugs would be stenciled wrong and he would have to restamp them, and I would drive around to the west door there,—and he would say, 'Drive around to the west door and we will put on some Royal Anns.' I hauled several mixed loads and he would tell me what to do that way, where to drive and what driveway to drive out to, and when to drive in for a load of lugs the other way,—he would tell me to go around to the west door. * * *""

On cross-examination he testified:

"Q. And he told you how many to put on?

"A. He wouldn't tell me just how many, but he wanted me to put on every one I would,—every one I would haul.

"Q. And how it was to be arranged on the truck?

"A. Yes.

"Q. Presumably to make a maximum load, and then to make delivery in La Grande?

"A. Yes.

"Q. Is that all he told you?

"A. Well—yes.

"Q. That is all; he told you how to arrange them on the truck to make a maximum load, and wanted you to put on all the truck would bear?

"A. Yes."

This arrangement did not change the status of respondent from that of a common carrier to that of a private employee.

"We, of course, have in mind that the true test of the relationship of employer and employee is not the actual exercise of control, but the right to exercise control—not the actual interference by the employer with the manner and method of accomplishing the result, but the right to interfere. Hillen v. Industrial Accident Commission, 199 Cal. 577 (250 Pac. 570); Johnson v. Dept. of Industrial Relations, 101 Cal. App. 1 (281 Pac. 440)." Becker et al. v. Industrial Accident Commission 212 Cal. 526 (298 Pac. 979).

■■ We agree with counsel for respondent that the court is bound by the findings of the jury on questions of fact (Oregon Code 1930, section 49-1843; *Farrin v. State Industrial Accident Commission,* 104 Or. 452 (205 P. 984)) when there is any competent evidence to support the verdict. In the instant case there is no competent evidence tending to show that respondent was not discharging the duties required of him by law, as a common carrier with his own licensed equipment, at the time he received the injury. The fact that the accident causing the injury gave respondent no cause of action against the shipper, while not conclusive,

is very persuasive that the relation of employer and employee under the Workman's Compensation Law did not exist at the time.

While Stackland carried on his operations as an orchardist under the Workman's Compensation Law, respondent was not required to, and did not make contribution to the fund.

The court erred in not granting defendant's motion for a directed verdict. The judgment will be reversed with instructions to the lower court to confirm the decision of the Industrial Accident Commission.

It is so ordered.

BELT, J., not sitting.