David COOPER and Michael Cooper, Plaintiffs–Appellants,

and

Diane Cooper, Plaintiff and Cross–Appellee,

v.

The UNITED STATES SKI ASSOCI- ATION, a Utah corporation, De- fendant–Appellee,

and

The Aspen Skiing Company, a Colorado corporation; The Aspen Valley Ski Club, a Colorado corporation; and John McBride, Jr., Defendants–Appellees and Cross–Appellants.

No. 99CA0187.

Colorado Court of Appeals, Div. III.

Aug. 17, 2000.

Rehearing Denied Oct. 12, 2000.

Certiorari Granted Oct. 1, 2001.

Freeman & Freeman, P.C., Martin H. Freeman, Aspen, Colorado; Klein–Zimet Professional Corporation, Herbert S. Klein, Aspen, Colorado; Michele Nelson Bass, Aspen, Colorado, for Plaintiffs–Appellants and Plaintiff and Cross–Appellee.

White & Steele, P.C., Peter W. Rietz, Kimberly A. Viergever, Denver, Colorado, for Defendant–Appellee.

Long & Jaudon, P.C., Stephen Hopkins, David H. Yun, David M. McLain, Denver, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Chief Judge HUME.

Plaintiffs, David Cooper (David) and Michael Cooper (father), appeal the judgment of the trial court in favor of Aspen Skiing Company (the Ski Company), Aspen Valley Ski Club (the Ski Club), John McBride, Jr. (collectively, the ski defendants), and United States Ski Association (the Association). We affirm.

By 1995, seventeen-year-old David had been a member of the Ski Club for approximately nine years and was actively involved in competitive ski racing. At the beginning of the 1995–96 season, David and his mother signed a form captioned "Aspen Valley Ski Club, Inc. Acknowledgment and Assumption of Risk and Release" (the release).

The release purported to relieve the Ski Club from:

any liability, whether known or unknown, *even though that liability may arise out of negligence or carelessness* on the part of the persons or entities mentioned above. The undersigned Participant and Parent or Guardian agree to accept all responsibility for the risks, conditions and hazards which may occur whether or not they are now known. (emphasis added)

The release further provided that:

the undersigned Participant and Parent or Guardian HEREBY AGREE TO WAIVE, RELEASE, DISCHARGE, INDEMNIFY AND HOLD HARMLESS any and all claims for damages for death, personal injury or property damage which they may have or which may hereafter accrue as a result of any participation in any Aspen Valley Ski Club, Inc. program and related activities and events. . . .

The undersigned Participant and Parent or Guardian further agree to forever HOLD HARMLESS and INDEMNIFY all persons and entities identified above, generally and specifically, from any and all liability for death, personal injury or property damage resulting in any way from participating in the activities and events described above.

By signing this Acknowledgment and Assumption of Risk and Release as the Parent or Guardian, I am consenting to the participant's participation in the Aspen Valley Ski Club, Inc. programs and related activities and acknowledge that I understand that any and all risk, whether known or unknown, is expressly assumed by me and all claims, whether known or unknown, are expressly waived in advance.

On December 30, 1995, David was participating in training for competitive Super G racing, a high-speed alpine discipline. The course had been set by David's coach, defendant McBride. David fell while negotiating the course and collided with a tree, causing severe injuries, including permanent blindness in both eyes.

Subsequently, after David attained the age of eighteen, he and his parents filed suit,

alleging negligence and breach of contract on the part of all of the defendants. The breach of contract claims and all of the mother's claims were later dismissed, and after further litigation concerning David's claims for negligence and his father's derivative claims, the trial court ultimately entered summary judgment in favor of the ski defendants and the Association on all claims. This appeal followed.

## I. Summary Judgment

Summary judgment is a drastic remedy which is appropriate only if the pleadings and supporting documents demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. The moving party bears the burden of establishing that no genuine issue of fact exists and any doubts in this regard must be resolved against the moving party. C.R.C.P. 56; *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

■ Whenever summary judgment is sought, the moving party must establish the basis for the motion and identify the portions of the pleadings, the exhibits, and the affidavits, if any, which demonstrate the absence of a genuine issue of material fact. In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo.1987).

■ Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his or her claims, a trial would be useless and the moving party is entitled to summary judgment as a matter of law. *Continental Air Lines, Inc. v. Keenan, supra.*

■ Our review of an order granting a motion for summary judgment is *de novo*. *See Aspen Wilderness Workshop, supra.*

## II. The Release

■ Plaintiffs contend that the trial court erred in determining that mother's execution of the release also acted as a release of David's claims. We disagree.

As a matter of public policy, courts have protected minors from improvident and imprudent contractual commitments by declaring that the contract of a minor is voidable at the election of the minor after he or she attains the age of majority. *Jones v. Dressel*, 623 P.2d 370 (Colo.1981).

On appeal, the parties do not contest the validity or enforceability of the mother's release executed in favor of the Ski Club. Rather, plaintiffs argue that the mother may not, as a matter of law, release the claims of her minor child.

As a preliminary matter, we reject the ski defendants' contention that David's filing of this lawsuit, originally containing claims for breach of contract, constituted a ratification of the contract. *See Jones v. Dressel, supra* (determination of acts constituting ratification or disaffirmance of contract ordinarily a question of law).

The critical issue for resolution is whether a parent may release the claims of a minor child for possible future injuries, and the trial court's ruling on this issue of law is subject to *de novo* review. *See Evans v. Romer*, 854 P.2d 1270 (Colo.1993).

Although there has been tangential reference to it, this question has not been specifically addressed by Colorado appellate decision. *See Jones v. Dressel, supra* (noting in fn. 1 that "approval by a parent does not *necessarily* validate an infant child's contract" (emphasis added)); *see also Del Bosco v. United States Ski Ass'n*, 839 F.Supp. 1470 (D.Colo.1993) (*Jones v. Dressel* left open, by negative implication, possibility that minor's contract could be validated by parent's ratification of same). Thus, it presents us with an issue of first impression.

In support of their position, plaintiffs cite cases from numerous jurisdictions holding

that a signature of a parent does not validate a minor's contract. *See Del Bosco v. United States Ski Ass'n, supra,* fn. 2 (collecting cases).

Upon review of these authorities, we do not find them helpful in deciding the precise issue before us. Specifically, the question before us involves a determination of whether the public policy of this state supports the enforcement of his mother's waiver of David's right to sue for possible future injuries that David might incur during recreational activities.

Several cases cited by the parties are more closely on point in addressing the public policy considerations surrounding the enforceability of a parent's release of a minor's claims in a recreational activity context.

In *Scott v. Pacific West Mountain Resort,* 119 Wash.2d 484, 834 P.2d 6 (1992), a twelve-year-old boy was injured while taking a ski-ing lesson at the defendant's resort. The boy and his mother had signed a ski school application that contained an exculpatory clause releasing the ski school from liability for negligent conduct.

The Washington Supreme Court determined that, as a matter of public policy in that state, a parent does not have the legal authority to release a child's claims for personal injuries resulting from negligent conduct. The court specifically noted that, under Washington law, a parent could not settle or release a child's post-injury claim without court approval. The court rejected any distinction between pre-injury and post-injury releases, stating that: "In situations where parents are unwilling or unable to provide for a seriously injured child, the child would have no recourse against a negligent party to acquire resources needed for care." *Scott v. Pacific West Mountain Resort, supra,* 119 Wash.2d at 494, 834 P.2d at 12.

The *Scott* court also noted with approval cases from other jurisdictions in making its public policy determination. *See Scott v. Pacific West Mountain Resort, supra,* fn. 19 (collecting cases).

The Ohio Supreme Court, on the other hand, has reached a different conclusion. In *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 696 N.E.2d 201 (1998), a seven-year-old child was enrolled in a non-profit soccer club. The child's mother executed an exculpatory agreement releasing the club from liability for any claims by the child.

The *Zivich* court determined that the issue involved a determination of whether Ohio public policy justified enforcement of the exculpatory agreement. In determining that the agreement was enforceable, the court examined pertinent statutory and case law in making its public policy decision. The court also reviewed case law discussing the importance of parental interest in the care, custody, and management of their children. Finally, the court noted with approval the distinction between pre-injury and post-injury releases. *See Zivich v. Mentor Soccer Club, Inc., supra; see also* A. Purdy, *Scott v. Pacific West Mountain Resort: Erroneously Invalidating Parental Releases of a Minor's Future Claim,* 68 Wash. L.Rev. 457 (1993)(cited in *Zivich* ).

Here, the trial court determined, and we agree, that Colorado should adopt the same conclusion as that reached by the *Zivich* court. In our view, the *Scott* decision does not reflect modern realities and does not adequately consider the import of parental decision-making.

### A.

Initially, we reject plaintiffs' various attempts to find *Zivich* inapplicable.

Plaintiffs argue that, as the release did not contain language expressly stating that the parent was releasing the claims of the minor, it was unenforceable against David. The release in *Zivich* did contain such express language; however, it did not appear that the minor in that case signed the release at all.

Here, the release is signed by both David and his mother and refers to "Participant and Parent or Guardian" throughout. Hence, it is evident that it was entered into by David and his mother together. *Cf. Del Bosco v. United States Ski Ass'n, supra* (release agreement at issue set forth separate waiver of child's claims, signed only by child, and waiver of parent's claims, signed only by parent; release invalid against child because

language did not indicate that parent adopted same waiver as child).

Thus, the release, read as a whole, expressly indicates that any and all claims for liability are waived and the responsibility therefor is assumed by the "Participant and Parent or Guardian."

Plaintiffs further attempt to distinguish *Zivich* by pointing to the fact that it addresses liability in a non-paid, volunteer situation. However, as set forth below, our decision is based on the fundamental liberty interest of parents in the rearing of their children. Thus, the distinction urged by plaintiffs is without significance.

## B.

The United States Supreme Court has recently reaffirmed that parents have a fundamental right under the Due Process Clause to make decisions concerning the care, custody, and control of their children. *See Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

The Supreme Court has also recognized that:

> The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.

*Parham v. J.R.*, 442 U.S. 584, 602, 99 S.Ct. 2493, 2504, 61 L.Ed.2d 101, 118 (1979).

The trial court here, in determining that Colorado should allow parents to release the pre-injury claims of their children, reasoned as follows:

> Thousands of such releases are signed each year by parents enrolling their children in almost every kind of school and recreational activity. Parents in executing or not executing such releases make conscious choices on behalf of their children concerning risks and benefits of participation in a program that may involve risk. Those decisions are individual and based upon circumstances of each family and activity. Those are proper parental choices

on behalf of their children which should not be ignored. So long as the decision is voluntary and informed, it should be given the same dignity as decisions regarding schooling, medical treatment and religious education.

We agree with this reasoning and find that it comports with the fundamental liberty interest of parents in the rearing of their children. *See Troxel v. Granville, supra.* This determination does not conflict with the long-standing concept that minors may ratify or disaffirm their own contracts upon reaching the age of majority. Rather, it affirms the right of families to make informed decisions regarding the conduct of their lives.

Furthermore, the concern articulated by *Jones v. Dressel, supra,* that minors should be protected from improvident and imprudent contractual commitments, is not implicated when a parent is involved in the decision-making process. *See Parham v. J.R., supra* (presumption that parents act in the best interests of their children).

Here, David and his mother had executed releases for several years in the past. David had participated in the Ski Club's activities for approximately nine years and had raced competitively for a number of those years. David and his mother made an informed, considered decision to waive any prospective claims in exchange for David's participation in the inherently dangerous activity of skiing. *See* § 33–44–102, C.R.S.1999 (legislative declaration in Ski Safety Act regarding inherent dangers of sport of skiing).

The release was clear and unambiguous on its face and set forth the circumstances surrounding the assumption of liability by "Participant and Parent or Guardian." *See Jones v. Dressel, supra* (setting forth four-part test for determining whether an exculpatory agreement may be found valid).

Thus, we hold that the otherwise enforceable release, as it was signed by mother, was valid and enforceable and acts to bar plaintiffs' claims against defendants Ski Club and McBride.

### III. Liability under the Restatement

Plaintiffs next contend that the trial court erred in dismissing their claims against the Ski Company. Specifically, plaintiffs argue that the Ski Company owed a duty under Restatement (Second) of Torts § 324A (1965) based upon its use permit from the United States Forest Service. We reject this contention.

■ Whether a defendant owes a legal duty to the plaintiff is a question of law to be determined by the court. *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313 (Colo.1980). Thus, a negligence claim will fail if the claim is based on circumstances for which the law imposes no duty. *University of Denver v. Whitlock*, 744 P.2d 54 (Colo. 1987).

■ Section 324A of the Restatement, as adopted by the Colorado Supreme Court in *DeCaire v. Public Service Co.*, 173 Colo. 402, 408, 479 P.2d 964, 966 (1971), provides that:

> One who undertakes, gratuitously or for a consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The premise of plaintiffs' argument here is that the Ski Company assumed a duty pursuant to the following language from the Special Use Permit issued to it by the U.S. Forest Service:

36.f. *Ski School*

The permittee shall have the exclusive right to maintain and operate a ski school on the permit area. The director for said school shall be qualified to the satisfaction of the Forest Supervisor, to give instruction and to direct others in giving instruction in all degrees of skiing proficiency required at the site. Ski safety shall be emphasized in all instruction.

Upon review of the record, we determine that plaintiffs failed to demonstrate that, under the circumstances at issue, a genuine issue of material fact exists as to whether this provision establishes a duty on the part of the Ski Company. At the time of David's accident, he was participating in a training run on a course that was set by defendants Ski Club and McBride. It is undisputed that the Ski Company had no involvement in the conduct of the race training on the date of the accident. It is also undisputed that the activities were being undertaken by the Ski Club and its members, and that the Ski Company's Ski School was not involved in the conduct of the Club or responsible for its activities.

Plaintiffs rely on excerpts from deposition testimony given by the Ski Company's General Manager and Vice President of Operations to the effect that the Company emphasized safety in its operations of the Ski School. However, such testimony fails to establish that a duty exists by the Company, as a matter of law, to supervise any and all instruction that might take place on its facilities.

Plaintiffs did not establish that the Ski Company had been involved in supervision of the Club's activities in any way whatsoever. Further, no evidence was presented that established that the Ski Company was obligated to seek out activities occurring on the mountain to determine whether they were being conducted safely.

The plaintiffs further failed to demonstrate that the Ski Company and the Ski Club were associated in any way. The Ski Company allowed the Club to use its trails and protective fencing if and when the Club desired. The evidence presented tended to establish only that the Club was a self-directed operation and was not conducted under the auspices of the Ski Company.

The Ski Company did not undertake to provide instruction through the Club. The argument that the Ski Company had a duty to direct the Club's activities is based on the

language of the Forest Service permit, which by its terms does not require the Ski Company to supervise instruction activities unless they are related to the Ski School. No evidence was presented which would tie the instruction at issue here to the Ski School or the Ski Company. Therefore, plaintiffs' attempts to fit the facts within the legal framework they propose are unavailing, and their contention here fails.

To follow plaintiffs' argument to its logical conclusion, the Ski Company would owe a duty to supervise any instruction that occurs at its facilities, whether directed and provided by the Company or not. This would be true regardless of whether the instruction was conducted by a ski club or organization, as here, or more informally, as by an individual or individuals. The Special Use Permit does not require such a conclusion. Plaintiffs have not established that such a duty exists at law, and we decline to so hold.

We also reject plaintiffs' argument that *United Blood Services v. Quintana,* 827 P.2d 509 (Colo.1992) and *Rian v. Imperial Municipal Services Group, Inc.,* 768 P.2d 1260 (Colo.App.1988), which discuss the concept of measuring the existence of negligence by the normal standards of skill and competence exhibited by members of a defendant's profession, are relevant to a determination of this issue. Plaintiffs did not establish that the Ski Company was in any way responsible for the supervision of the Ski Club's activities, nor do the bare assertions of their counsel establish that the ski industry as a whole is negligent in failing to supervise any and all types of instruction occurring at ski areas.

We conclude that the plaintiffs failed to demonstrate by production of any evidence that the Ski Company owed a duty to David under the Forest Service permit. Similarly, the plaintiffs failed to demonstrate that the Ski Company undertook any duty to render services to the Ski Club or to assure the safety of their members, including David, from the risk of physical harm from engaging in skiing activities. In addition, no evidence was produced to demonstrate that any undertaking by the Ski Company increased the risk of harm to David or the members of the Ski Club, or that David relied upon any undertaking of the Ski Company to assure his safety. We thus determine that the Ski Company owed no duty to David under either the provisions of the Forest Service Permit or the principles of Restatement § 324A.

### IV. Claim Based on Applicability of the Ski Safety Act

Plaintiffs further contend that the trial court erred in determining that the Ski Safety Act of 1979, § 33–44–101, et seq., C.R.S.1999, barred David's claims against the Ski Company because they resulted from a collision with a tree, an "inherent risk" of skiing. *See* §§ 33–44–103(3.5) & 33–44–109(1), C.R.S.1999. Upon examination of plaintiffs' allegations against the Ski Company, we determine that we need not decide this issue.

Plaintiffs' complaint alleged, in part, that David's injuries were proximately caused by the negligent setting of the race course. Plaintiffs thus contended that the Ski Safety Act does not apply to bar their claim because the injury was not an inherent risk of skiing. This allegation depends on the premise that the course placement was negligent.

Plaintiffs alleged that the Ski Company "required" the Ski Club to set the training course in an allegedly negligent manner. They alleged that this negligence resulted in the placement of the course too close to the edge of the slope, without the use of protective fencing, and without an adequate "fall zone," thus causing David's collision with a tree and the resulting injuries.

However, a review of the record reflects no evidence to support the bare allegation that the Ski Company had any involvement at all in the placement of the course. Rather, the ski defendants presented evidence indicating that the course was set by McBride, acting within his capacity as a coach for the Ski Club, without direction or involvement by the Ski Company.

Plaintiffs presented no evidence that would tend to create a triable issue of fact on this allegation. *See Sender v. Powell,* 902 P.2d 947 (Colo.App.1995) (party opposing summary judgment may not rest upon mere alle-

gations or denials in its pleadings, but must provide specific facts demonstrating existence of genuine issue for trial); *Bauer v. Southwest Denver Mental Health Center, Inc.,* 701 P.2d 114 (Colo.App.1985) (counsel cannot raise genuine issue simply by means of argument; contentions must be supported in accordance with C.R.C.P. 56).

Thus, as there was no evidence presented that would create a triable issue as to whether the Ski Company had any involvement with the setting of the training course, the claim, which depends on this premise, fails.

Consequently, we do not address the applicability of the Ski Safety Act. *See In re Estate of Krotiuk,* 12 P.2d 302 (Colo.App. 2000) (appellate court will uphold decision by trial court that has reached a correct result, although using different reasoning).

### V. Liability of the Ski Association

Plaintiffs also contend that the trial court erred in granting the Association's motion for summary judgment, urging that genuine issues of fact exist as to the Association's duty under Restatement § 324A. We do not agree.

▮ In order to be subject to liability to a third person for physical harm, it must be established that the defendant has undertaken, gratuitously or for consideration, to render services to another which it should recognize as necessary for the protection of the third person. *See DeCaire v. Public Service Co., supra.*

▮ In order to establish that a defendant has assumed a duty, a plaintiff must establish two facts: (1) that the defendant, either through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff; and (2) either that the plaintiff relied on the defendant to perform the service or that defendant's undertaking increased plaintiff's risk. *See Jefferson County School District R–1 v. Justus,* 725 P.2d 767 (Colo.1986) (analyzing Restatement (Second) of Torts § 323 (1965), which closely parallels Restatement § 324A).

A conclusion that a defendant has assumed a duty is only appropriate where both of these findings are made, either by the court under summary judgment standards, or by the jury where plaintiff introduces sufficient evidence to raise a genuine issue of fact. *Jefferson County School District R–1 v. Justus, supra.*

▮ Here, the Association functions as the sanctioning body of ski racing in the United States. Plaintiffs assert that the Association, by providing training and education seminars that could be attended by ski coaches, undertook to render a service that was reasonably calculated to prevent David's injury.

Plaintiffs argue that, as a coach must be certified as a "Level III" coach before the Association recognizes his or her ability to set high-speed race courses, it was therefore obligated to ensure that only Level III coaches were setting courses at any venue in the United States where training for high-speed races was being conducted. Plaintiffs also assert that the Association was "encouraging" uncertified ski coaches to set these courses, knowing that they did not have the ability to do so.

Nevertheless, we reject plaintiffs' argument that a genuine issue of material fact exists as to these claims. A review of the record reveals that defendant McBride was certified at Level II and that he had attended some of the Association's training seminars. However, plaintiffs' conclusions drawn from that evidence are not substantiated. There is no evidence that the Association undertook an obligation to train ski coaches around the country for the benefit of their students. While the Association does provide training and education, there is no evidence that this activity was "reasonably calculated" to ensure the safety of skiers participating in club activities.

While the Association provides "certification" to its member coaches, this fact alone does not establish that it assumes the responsibility for the qualification of coaches for all purposes. Rather, we agree with the trial court that the evidence presented established that the Association does not control

training programs run by individual ski organizations. Furthermore, the training during which David was injured was not an event sanctioned by the Association and was not connected with any Association activity.

Accordingly, the trial court did not err in granting summary judgment for the Association, as plaintiffs failed to establish a duty as a matter of law. We therefore reject plaintiffs' other contentions as they relate to the alleged liability of the Association.

## VI. Cross–Appeal

On cross-appeal, the ski defendants assert that the trial court erred in determining that the indemnity provision in the release signed by mother was unenforceable.

However, as we have determined that the release was enforceable against David, this holding necessarily precludes a finding of liability against the Ski Club. Thus, there can be no resulting obligation on the part of the Ski Club to be indemnified. Therefore, we dismiss the cross-appeal as moot.

Similarly, based on our disposition of the legal issues, plaintiffs' contentions regarding change of venue and the admissibility of certain expert testimony are also moot. Thus, we do not address them.

Finally, we note that summary judgment was properly entered against father, as his claims were brought as and are derivative of David's claims. *See Kinsella v. Farmers Insurance Exchange*, 826 P.2d 433 (Colo. App.1992) (while parent has legally recognized claim for damages when minor child sustains physical injury, claims for collateral damages are derivative thereto and depend upon right of injured party to recover).

The judgment of the trial court is affirmed.

Judge NEY and Judge DAVIDSON concur.