[S. F. No. 12001.   In Bank.—November 3, 1926.]

## R. C. HILLEN et al., Petitioners, v. THE INDUSTRIAL ACCIDENT COMMISSION and FRANK M. DOWNING, Respondents.

[1] WORKMEN'S COMPENSATION ACT—EMPLOYER AND EMPLOYEE—PRESUMPTIONS.—By the terms of the Workmen's Compensation Act, every person in the service of an employer under an employment or contract of hire is an employee; and any person rendering service for another, other than an independent contractor, or as expressly excluded by the provisions of the act, is presumed to be an employee.

[2] ID.—BURDEN OF PROOF.—Where it is admitted that one, at the time of receiving personal injuries, was actually performing service for another, the burden of proof rests upon the latter to establish that the former was an independent contractor.

[3] ID.—MIXED QUESTION OF LAW AND FACT—FINDINGS OF COMMISSION.—Whether or not the relation of employer and employee existed under the oral contract in this case was a question of mixed law and fact, to be proved like any other question; and the finding of the Industrial Accident Commission that that relation existed between the parties is binding on the court in a proceeding in *certiorari* to review the decision of the Commission, there not being such an entire absence of evidence in the record as to render the finding unreasonable, or to show that the Commission exceeded its powers.

---

1.   See 27 Cal. Jur. 276.
2.   See 27 Cal. Jur. 487.
3.   See 27 Cal. Jur. 285.

**[4]** ID.—CONSTRUCTION OF CONTRACT.—Where one who was engaged to do certain work did not contract to produce results through means and men chosen by himself, but agreed to give his own personal services in laying shingles at a certain price per thousand, instead of by the day, the evidence showing that the owner could at any moment direct the details of the work, the relation between the parties was that of employer and employee.

**[5]** ID.—MANNER OF PAYING WAGES.—A workman who is paid wages by the piece or quantity comes within the provisions of the Workmen's Compensation Act the same as one who is paid by the day, as wages may be measured by time, by the piece, or by any other standard.

**[6]** ID.—TEST OF RELATIONSHIP—CONTROL.—One of the best tests to determine whether the relation between the parties is that of an independent contractor or of employer and employee is the right of control; and it is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent.

---

(1) Workmen's Compensation Acts, C. J., p. 47, n. 33, p. 115, n. 30 New.  (2) Workmen's Compensation Acts, C. J., p. 115, n. 30 New. (3) Workmen's Compensation Acts, C. J., p. 48, n. 41, p. 122, n. 40. (4) Workmen's Compensation Acts, C. J., p. 50, n. 63.  (5) Workmen's Compensation Acts, C. J., p. 47, n. 33, p. 50, n. 63.  (6) Workmen's Compensation Acts, C. J., p. 47, n. 33, p. 115, n. 37.

PROCEEDING in Certiorari to review a decision of the Industrial Accident Commission awarding compensation for personal injuries. Award affirmed.

The facts are stated in the opinion of the court.

James M. Wallace, R. P. Wisecarver and Redman & Alexander for Petitioners.

G. C. Faulkner and Warren H. Pillsbury for Respondents.

WASTE, C. J.—The petitioners sought and obtained a writ of *certiorari* to review a decision of the Industrial Accident

---

5. Applicability of act to piece-workers, note, 38 A. L. R. 839. See, also, 27 Cal. Jur., 284; 28 R. C. L. 763.

6. Distinction between independent contractor and employee, note, Ann. Cas. 1918B, 708. See 13 Cal. Jur. 1019; 28 R. C. L. 762.

Commission awarding Frank M. Downing compensation for injuries received while shingling a building, the sole question presented being whether or not Downing was an independent contractor or an employee of the petitioner Hillen. It was stipulated before the Commission that if Downing was in fact an employee of Hillen, the injury he received arose out of and in the course of his employment.

The facts are without conflict. Hillen was engaged in the business of building and selling homes in the city of Oakland. Downing was a shingler by trade. Some time before the accident in question he called on E. W. Urch, Hillen's superintendent, and, referring to the particular job, asked "if the shingling was let." It being customary in the building business to have shingling done "at so much per thousand," he left with Urch a card on which was written his name and telephone number and a notation which read "$1.25 – thousand, 3 cts. for ridges," that being the price for which he was willing to lay the shingles. When the house was ready for shingling the superintendent sent for Downing and put him to work. After the first negotiations, which were as above related, Downing worked on a number of houses, he apparently being the only one doing any shingling for Hillen during that period. The arrangement under which he worked was, as testified to by Superintendent Urch, "a mutual understanding when he would come on the job it would be $1.25 a thousand, and there was nothing further said about the agreement to shingle, and when each job was done the bill would be made per thousand, and I would O. K. it, send it to the office and it would be paid." On the first jobs the superintendent watched Downing very closely until satisfied that he was a competent shingler. As Downing proved to be a careful workman only occasional directions were given to him at that or any subsequent time, but the shingling was always under the watchful supervision of Hillen's superintendent or foreman. Hillen furnished the shingles, nails and other materials required for shingling the houses, and all necessary ladders and other appliances for the work. His superintendent, or the foreman on the job, estimated and ordered the number of shingles required, and Downing put them on. Downing used his own shingler's hatchet, "snips" for cutting valley tin, and shingler's apron. For the purpose of

"rushing" two or three jobs on which he worked Downing was directed by Urch to get other shinglers to assist him. Neither Hillen nor his superintendent had any part in the employment of the extra men. Downing collected the amount due for the shingling and paid them the same amount he was getting for his own work. Neither Downing nor the extra shinglers who worked with him were carried on Hillen's pay-roll. Downing was not required to work any specified number of hours. When a house was finished he made out his bill "so many thousand shingles, so many feet of ridges. [Urch] would O. K. it, send it to the office and [Downing] would get his check."

[1] By the terms of the Workmen's Compensation Law (Stats. 1917, p. 831) "every person in the service of an employer . . . under any appointment or contract of hire" is an employee. (Sec. 8a.) Any person rendering service for another, other than as an independent contractor, or as expressly excluded by the provisions of the act, is presumed to be an employee. (Sec. 8b.) [2] It is admitted that Downing was at the time of his injury actually performing service for Hillen. Consequently, the burden of proof rests upon Hillen to establish that Downing was an independent contractor. (Sec. 19d [1].) It was therefore necessary for him to show that Downing was, within the definition of the term, a person rendering "service, other than manual labor, for a specified recompense for a specified result, under control of his principal as to the result of his work only and not as to the means by which such result is accomplished." (Sec. 8b.) [3] Whether or not the relation of employer and employee existed in this case, under the oral contract entered into, is a question of mixed law and fact, to be proved like any other question. The finding of the Commission, in effect, that the relation existed between Hillen and Downing is binding on this court. (*Pacific Gas & Elec. Co.* v. *Industrial Accident Com.*, 180 Cal. 497, 499 [181 Pac. 788].) Unless there is such an entire absence of evidence in the record as to render the finding unreasonable, or in excess of the powers of the Commission, the court is not empowered to set it aside. (*Eastman Co.* v. *Industrial Accident Com.*, 186 Cal. 587, 598 [200 Pac. 17].) The award of the Commission may be annulled only if there is no substantial evidence in support of its findings. (*Press Pub.*

*Co.* v. *Industrial Accident Com.,* 190 Cal. 114, 124 [210 Pac. 820].)

[4] We are of the view that Downing did not contract to produce results through means and men chosen by himself, but that the arrangement was one by which he engaged to give his own personal services. The facts do not import an employment to do a job of shingling, but a contract to lay shingles at a price per thousand, instead of by the day. The evidence on the point is very clear. Downing testified that he sometimes got more and sometimes got less than $1.25 per thousand for shingling; that sometimes he worked by the day, getting $8 a day; that it is more advantageous to work at $1.25 a thousand; that he could not always get a job shingling by the day, and worked for Hillen at the rate per thousand because at that price he gained on his work, and Hillen gave him all his work to do. Hillen testified that he instructed his superintendent, Urch, to "let it [the shingling] out on a contract," which meant, he further testified, "nothing more than that he [was] to pay a certain rate per thousand." According to his testimony, also, it is "a custom to lay shingles by the thousand. Pretty near every builder and contractor does it that way, in fact most of the good shinglers,—that is the only way they will do it because they can make more money that way than they can by the straight day work."

[5] A workman who is paid wages by the piece or quantity comes within the provisions of the Workmen's Compensation Act the same as one who is paid by the day. Wages may be measured by time, by the piece, or by any other standard. (*McKinstry* v. *Guy Coal Co.,* 116 Kan. 192 [38 A. L. R. 837, 225 Pac. 743], and note in 38 A. L. R. 839.) [6] One of the best tests to determine whether the relation is that of an independent contractor or that of employer and employee is the right of control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. (*Tuttle* v. *Embury-Martin Lumber Co.,* 192 Mich. 385, 399 [Ann. Cas. 1918C, 664, 158 N. W. 875].) It is not a question of interference, or noninterference, not a question of whether there have been suggestions, or even orders, as to the conduct of the work; but a question of the right to act, as distinguished from the act

itself or the failure to act. (*Carleton* v. *Foundry & Machine Prod. Co.*, 199 Mich. 148, 152 [19 A. L. R. 1141, 165 N. W. 816].) The evidence in this case fully supports the conclusion that Hillen, through his superintendent of construction or foreman, could at any moment direct the details of the work done by Downing. On occasions that was done. Coincident with the right of control is the right of either the employer or the employee to terminate the relation without liability. This is but another way of stating the rule, for the right to immediately discharge involves the right of control. (*Industrial Com.* v. *Bonfils*, 78 Colo. 306 [241 Pac. 735].) The decision of the district court of appeal in *Helmuth* v. *Industrial Accident Com.*, 59 Cal. App. 160 [210 Pac. 428], correctly applies the rule in this case. There is nothing in the record to indicate that Downing was not free at all times to discontinue the work without legal liability, and, as to the right of Hillen to discharge him at any time, he testified that if he was discharged the builder "would pay [him] for what [he] put on and that would be the end of it."

The award is affirmed.

Shenk, J., Richards, J., Finch, J., *pro tem.*, and Finlayson, J., concurred.

Rehearing denied.