[L. A. No. 14380. In Bank.—February 23, 1934.]

ALTON R. McBURNEY, Petitioner v. INDUSTRIAL ACCIDENT COMMISSION, and CITY OF MONROVIA, Respondents.

Herlihy & Herlihy, E. Herbert Herlihy and F. George Herlihy for Petitioner.

Everett A. Corten, Everett W. Mattoon, County Counsel, Fred M. Cross, Deputy County Counsel, and William Fleet Palmer for Respondents.

THE COURT.—This is a proceeding to review an order of the respondent commission denying compensation to the petitioner.

In January, 1932, the petitioner applied to the bureau of county welfare of the county of Los Angeles for assistance. After due investigation he was found to be a resident of the county and entitled to the relief sought. His requirements were fixed at $41.60 per month. From that time until April 11, 1933, he was given aid through the county welfare department. That aid took various forms. He was given groceries at irregular intervals from January 21, 1932, until April 11, 1933. At numerous times he received contributions of cash or its equivalent in rent. Commencing on January 26, 1932, also at irregular intervals, he was given work orders, covering a working period of about forty-five days, the last one being dated December 17, 1932. By arrangement between the bureau of county welfare and other public agencies in the county, men who received work orders from the bureau were sent out to perform work for the period indicated on the card, and usually under the joint supervision of the representatives of the bureau and such other public agencies. When the last work card was issued to the petitioner he reported to a city foreman of the City of Monrovia and was assigned to assist in clearing out a drainage ditch in said city. The work performed on this project is described as "made work", which is work provided in administering public relief and required as a condition imposed upon able-bodied persons receiving aid.

While the petitioner was working on or near a truck owned by the City of Monrovia and engaged in the same project work, he sustained an injury to his foot and ankle. The injury occurred on December 28, 1932, and on January 9, 1933, the petitioner filed with the respondent commission

his application for an adjustment of his claim. After a full and fair hearing the commission found that the petitioner was injured "while occupying the status of receiving aid from the county welfare department of the county of Los Angeles", and that he "was not an employee as defined by law at the time of said injury", and ordered that the applicant take nothing.

Two questions are presented. The first one is whether the petitioner, at the time of the injury, was an employee as contemplated by the Workmen's Compensation Act. If he was, the next question is: Was he an employee of the County of Los Angeles or of the City of Monrovia, or both? If he was not an employee, the second question need not be answered.

The problem of determining the status of a workman injured while engaged in public work as a condition of his receiving aid from public funds set aside for such purposes is of comparatively recent origin. It is a new one in this court. The respondent commission has been called upon in numerous cases to determine the question and has uniformly held that such a workman is not an employee as defined by our workmen's compensation laws. In at least one case the District Court of Appeal has denied a petition to review an order of the respondent commission in a similar case. (*Van Devanter* v. *Industrial Acc. Com.*, [no opinion] Civ. No. 8439, First App. Dist., Div. Two, March 21, 1932.)

Workmen's compensation laws were not known at common law. They are of constitutional or statutory origin and have been upheld generally on the theory that industry should assume the liability of industrial injuries and death as a part of the cost of production. More recently the same liability has been extended to employment in other lines of endeavor, including public contracts for labor and services

In any case, the relationship of employer and employee under a contract of employment is essential to recovery of compensation. Section 7 of our Workmen's Compensation Act defines an employer as one "who has any person in service under any appointment or contract of hire . . . express or implied . . . ". Section 8(a) of the same act defines the term employee as "Every person in the service of an employer as defined by section 7 hereof under any ap-

pointment or contract for hire . . . , express or implied
. . . "

Section 1 of the act of 1901 providing for the mainte-
nance and support of certain indigent persons resident of
the county (Stats. 1901, p. 636, as amended; see Deering's
Gen. Laws, vol. 2, p. 3630, Act 5814) provides: "Every
county and every city and county shall relieve and support
all . . . indigent persons . . . lawfully resident therein.
. . . " Section 5 of the same act makes it the duty of the
board of supervisors, or of any person or society so author-
ized by the board, to investigate every application for relief
from the funds of the county; to supervise by periodic
visitation every person receiving such relief; to devise ways
and means of bringing such persons unable to maintain
themselves to self-support, and to keep full and complete
records of such investigation, references, relief and rehabili-
tation. Section 6 of the act provides that whenever any
person receiving relief under the act shall be or become the
owner of any property, real, personal or mixed, it is made
the duty of the district attorney to marshal such property
in the manner provided and to cause the same to be applied
on the support furnished by the county.

In compliance with the provisions of the foregoing act
the county of Los Angeles has raised large sums of money
by taxation for such relief. This money is kept in a sepa-
rate fund in the county treasury and is disbursed therefrom
on the order of the bureau of county welfare.

It may not be doubted that on the record presented
the petitioner made application for relief and the bureau
of county welfare granted the same in contemplation of and
pursuant to the act of 1901. During the time a person is
receiving relief under that statute he is in a sense a ward
of the county, in whose behalf the legislature has laid the
duty upon the county to provide relief, of course only to the
extent of its ability to do so. The petitioner had the right
to invoke the relief granted and under the circumstances
here shown the county could not deny it. The transaction
thus far is in the field of public welfare, and the essential
characteristics of a contract of hire are not present. Does
the fact that a person while receiving such aid is sent out
under work orders at a definite sum per hour or day there-
under supply such essentials? We are persuaded that it

128

does not, on the record here presented. The petitioner's case was classified as an "open welfare case". That meant that he was entitled to relief and would be for some time to come. He would receive the relief whether he worked or not. The assistant director of relief projects testified that the bureau of county welfare provides work under a number of classifications, or a number of circumstances; that there were welfare cases when a doubt arose as to whether an applicant for relief would work if he had a chance; that in such a case a work test was prescribed for the man; that for this work he might not be paid at all, or might be paid a nominal sum, or he might be paid a substantial sum, even the equivalent of a going wage; that during the period of depression and wide-spread unemployment there were many able-bodied men willing to work who would be entitled to relief under the act of 1901, but who felt an abasement in accepting it with idleness and therefore preferred while receiving the relief to be engaged in some kind of activity; that the plan evolved has proved its merit by experience and is beneficial in two aspects; first, it demonstrates to the welfare authorities the sincerity and good faith of the applicant, or the opposite; and secondly, it relieves the recipient of the odium of idleness while receiving aid from public funds.

When the county supports an indigent man, the county "is entitled to his services and earnings to aid in his support". (48 Cor. Jur., p. 543.) If a contract for hire existed the petitioner would be entitled to enforce payment from the funds of the county of the reasonable value of the services rendered. His status as here disclosed would not lend support to such a cause of action; and we conclude that a contract of hire did not exist between the county and the petitioner at the time in question.

Recent decisions in other states involving the same or analogous situations are to the same effect. (*Bashman* v. *County Court, Kanawha County,* [December, 1933] (W. Va.) 171 S. E. 893; *In re Moore,* [October, 1933] (Ind. App.) 187 N. E. 219; *Vaivida* v. *City of Grand Rapids,* 264 Mich. 204 [249 N. W. 826]; see, also, *Thurston Chapter., etc.,* v. *Department of Labor,* 166 Wash. 488 [7 Pac. (2d) 577]; *Stiles* v. *Des Moines Council, Boy Scouts of America,* 209 Iowa, 1235 [229 N. W. 841]; *Dillon* v. *Trus-*

*tees of St. Patrick's Cathedral,* 234 N. Y. 225 [137 N. E. 311] ; *Zoulalian* v. *New England Sanatorium & Benev. Assn.,* 230 Mass. 102 [119 N. E. 686, L. R. A. 1918F, 185].)

Counsel for the petitioner has not cited any authority contrary to the recent decisions in West Virginia, Indiana and Michigan, above referred to, which are directly in point, and we have discovered none.

The order is affirmed.