[Civ. No. 9438. Second Appellant District, Division One.—July 10, 1934.]

HARTFORD ACCIDENT & INDEMNITY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and EDWARD WHALEN, Respondents.

633

George L. Greer for Petitioner.

Everett A. Corten and L. Lee Bernstein for Respondents.

HOUSER, J.—The pertinent facts upon which a decision by this court depends are substantially that Volunteers of America is a religious and charitable corporation having all the powers of a natural person "to do any and all things which a natural person might do necessary or desirable for the general purpose for which the corporation is organized"; that in the performance of its several activities Volunteers of America sold for cash to the public certain "rehabilitated" shoes and other articles; besides which, frequently it freely bestowed charity, sometimes in cash but more generally in merchandise, upon assumedly worthy individuals. However, ordinarily when the applicant was able to work he was required to do so in payment for the articles of clothing or merchandise for which he made

application. It also appears that on a certain day one Whalen applied to Volunteers of America for material assistance in the way of certain articles of clothing which he desired. In accord with its usual custom in such circumstances, prior to the delivery of such articles of clothing to Whalen, he was set to work by Volunteers of America at miscellaneous small jobs, such as sweeping the premises, bundling papers, sorting clothing, etc., which occupied his time for a period of approximately two days. The rate of compensation for such services was fixed at twenty-five cents per hour. Having received the articles of clothing for which he had applied, but at a time when he still was upon the premises occupied by Volunteers of America, Whalen sustained certain injuries on account of which he later made application to the respondent Industrial Accident Commission for compensation which, by order of the respondent, was awarded to him. Whereupon, in due course, at the instance of Hartford Accident & Indemnity Company, which is the insurer of Volunteers of America, a writ of review of the proceedings had before the respondent commission was issued from and out of this court for the purpose of determining the legality of the said order.

The first point presented by the petitioner for the consideration of this court relates to the question whether, within the meaning and intent of the provisions of the Workmen's Compensation Act, at the time when the injury was suffered by Whalen he was an employee of Volunteers of America. In that connection, at the outset it should be noted that on the date when the accident happened which resulted in the injuries to Whalen, the Workmen's Compensation Act did not contain the provision that is now included therein, by the terms of which ''any person or persons who perform services in return for aid or sustenance only, received from any religious, charitable or relief organization'', apparently are excluded from the benefits which under the provisions of the act accrue to employees in general. (Stats. 1933, p. 2613.) To the contrary, by no provision of the act then in force was any religious, philanthropic or eleemosynary organization or corporation specifically exempted from the binding force of the statute as it affected either corporations or individuals. Indeed, in terms, the act defines an employer as '' . . . all public

corporations and *quasi*-public corporations and public agencies therein, and every person, firm, voluntary association, and private corporation, including any public service corporation, who has any person in service under any appointment or contract of hire, or apprenticeship, express or implied, oral or written, and the legal representative of any deceased employer''. In addition thereto, an employee is defined as ''every person in the service of an employer as defined by section 7 hereof under any appointment or contract of hire, or apprenticeship, express or implied, oral or written . . . but excluding any person whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer, . . . '' And that ''the phrase 'course of trade, business, profession or occupation of his employer' shall be taken to include all services tending toward the preservation, maintenance or operation of the business, business premises or business property of the employer. The words 'trade, business, profession or occupation of his employer' shall be taken to include any undertaking actually engaged in by him with some degree of regularity, . . . '' (Secs. 7 and 8, Workmen's Compensation Act.) In consideration of such language, together with the presumption (ordinarily) that any person who renders services for another is an employee (sec. 8[b], Workmen's Compensation Act; *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 580 [250 Pac. 570]), ordinarily it would seem clear that the mere fact that the assumed employer herein was a religious and charitable corporation in itself would not be determinative of the question here involved, nor adversely affect the right of recovery of compensation by one of its employees who sustained an injury arising out of and in the course of his employment. And even though the work that was performed by Whalen in a sense was ''casual'', if it was in the ''course of trade'', that is to say, if the work done included an ''undertaking actually engaged in by him (it) with some degree of regularity'', ordinarily it should follow that the relationship of employer and employee was established.

Regarding the question of the existence of such a relationship, in view of the important fact that the employer was a religious and charitable corporation and the employee was an applicant for material assistance, in the case of *Gilroy*

v. *Mackie et al. (Leith Distress Committee)*, 2 B. W. C. C. 269, it was held that where under an unemployment workman act a "distress committee" provided temporary work for an applicant therefor, a contract of employment was created; and on account of an injury suffered by such applicant in the course of such employment he was entitled to compensatory relief. And in *Porton* v. *Central Unemployed Body for London*, (1908) 100 L. T. 102; 2 B. W. C. C. 296, it was held that the Central Body under the Unemployed Workmen Act were "employers" within the meaning of the compensation act; and that a workman who was employed by such body, having been killed in the course of and arising out of his employment, his widow was entitled to compensation. (See, also, *Burns* v. *Manchester & Salford Wesleyan Mission*, 1 B. W. C. C. 305; *MacGillivray* v. *Northern Counties Institute for the Blind*, 48 Scotch L. R. 811, 4 B. W. C. C. 429.)

▆ With relation to whether the work that the applicant herein performed for Volunteers of America was "in the course of trade" of the employer, the case of *Walker* v. *Industrial Acc. Com.*, 177 Cal. 737 [171 Pac. 954, L. R. A. 1918F, 212], is decisive. It was there held (syllabus):

"Evidence that a lodging-house keeper was in the habit of employing someone to help out the chambermaid in taking up carpets and matting, and cleaning walls, transoms, windows, and curtains, warranted the conclusion that the person employed was engaged in the usual course of business of the employer, covering the normal operations which formed part of the ordinary business carried on by the lodging-house keeper, and that the person so employed, though only casually employed, was not excluded from the benefits of the Workmen's Compensation Act by section 14, which excludes from its benefits any person 'whose employment is both casual and not in the usual course of the trade, business, profession, or occupation of his employer'."

That decision, together with the plain language of the statute, leaves no room for doubt regarding the fact that the services rendered by the applicant were "in the course of trade" of his employer, if there was a relationship of employer and employee as contemplated by the Workmen's Compensation Act.

■ In several different cases it has been decided that a money consideration for the services performed was not a deciding factor in the question of whether the status of employer and employee existed. As to the essential element of consideration required to pass from employer to employee, it is sufficient if it be of that character usually denominated as "valuable". In that connection, see *Gabel* v. *Industrial Acc. Com.*, 83 Cal. App. 122, 125 [256 Pac. 564], and authorities there cited; also, *Western Ind. Co.* v. *Pillsbury*, 172 Cal. 807, 810 [159 Pac. 721]; *New York Ind. Co.* v. *Industrial Acc. Com.*, 80 Cal. App. 713 [252 Pac. 775]; *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 Pac. 570]. In the instant case, it therefore becomes obvious that, stated in its reverse form, the fact that, in effect, for the services performed by Whalen he received clothing, rather than money, presents no obstacle to a determination that a "contract of hire" or employment existed between the immediate parties to the transaction. ■ In addition thereto, repeatedly it has been held that when the subject of dispute is whether a contract of employment has been entered into, a finding made thereon by the commission based upon substantial evidence may not be disturbed by a reviewing tribunal. (27 Cal. Jur., 277, 575; and 1932 Supp. to same, 1108.) Going further, in the case of *Hillen* v. *Industrial Acc. Com.*, 199 Cal, 578 [250 Pac. 570, 571], it was held that, even when the question of the relationship between the parties constituted a *mixed question of law and fact*, it was to be proved "like any other question", and that a finding of the commission "in effect that the relation existed . . . is binding on this court". Since it is evident that as to whether Whalen was an employee at most is "a mixed question of law and fact", very properly the question might here arise, if the principle of the decision in the case just cited is sound and is to be relied upon, whether that does not end the matter as far as further consideration by this court is concerned.

However, on the other hand, in the case of *McBurney* v. *Industrial Acc. Com.*, 220 Cal. 124 [30 Pac. (2d) 414], it was held that an indigent person who, pursuant to the provisions of the statute (Stats. 1901, p. 636) was entitled to receive, and was receiving, aid in various ways, including "relief work", or "made work", from the county welfare

department of Los Angeles County, was not an employee within the meaning of the Workmen's Compensation Act. Apparently the decision therein is based upon the reasoning that since by statute the county was compelled to "relieve and support . . . indigent persons; . . . to supervise by periodic visitation every person receiving such relief; to devise ways and means of bringing such persons to self-support"; etc.,—the applicant became "in a sense a ward of the county"; and notwithstanding the fact that "he would receive the relief whether he worked or not"; and that if he chose to work "he might not be paid at all, or might be paid a nominal sum, or might be paid a substantial sum, even the equivalent of a going wage";—still "the transaction is in the field of public welfare, and the essential characteristics of a contract of hire are not present". In other words, although the applicant for aid was not compelled to work, if he chose to do so, and the arrangement or understanding between him and the county was that for such work he was to receive a definite wage, nevertheless he was not an employee. To the contrary of such declaration of law is the principle announced in the case of *California Highway Com.* v. *Industrial Acc. Com.*, 200 Cal. 44 [251 Pac. 808, 49 A. L. R. 1377]. In the well-reasoned opinion therein it is ruled that (syllabus):

"A convict engaged in the performance of labor on the state highway, under the provisions of chapter 316 of the Laws of 1923, is an employee within the meaning of the Constitution and the Workmen's Compensation Act."

However, in cases in which similar facts and circumstances were involved, the McBurney decision is well supported, especially in each of several of our sister states. (*Basham* v. *Kanawha County Court*, (W. Va. 1933) 171 S. E. 893; *In re Moore*, (Ind. App. 1933) 187 N. E. 219; *Vaivida* v. *City of Grand Rapids*, (1933) 264 Mich. 204 [249 N. W. 826, 88 A. L. R. 707].) But neither in the McBurney case nor in either of the cases hereinbefore cited as authority for the decision therein were the circumstances like those herein involved. In each of such cases the applicant for aid was legally entitled to receive it. Especially in the McBurney case, by the terms of the statute the county was required to support the applicant. Whether he worked

or not, either as a direct payment for the supplies furnished him, or at a stipulated wage, was entirely optional with him. However, in each of certain other decisions cited as persuasive precedents in the McBurney case, a situation is presented analogous to that herein, and in which cases the principle is announced that the relationship of employer and employee was not established.

In the case of *Stiles* v. *Des Moines Council, Boy Scouts of America*, (1930) 209 Iowa, 1235 [229 N. W. 841], it appeared that at the request of staff officers of the organization of Boy Scouts, a boy who had attained the rank of "Eagle" in such organization, went to a proposed summer camp with the understanding that he was to help prepare such camp for the use of young boys (who paid for their accommodations), and that in payment for such services by the "Eagle scout" he was to receive his board and lodging; —and it was held that he was not an employee and consequently, on account of an injury received by him in the course of and arising out of his "employment", he was not entitled to compensation under the provisions of the Workmen's Compensation Act.

Likewise, in *Blust* v. *Sisters of Mercy*, 256 Mich. 1 [239 N. W. 401], it was held that a young woman who was injured while performing domestic duties in return for "normal training" in an academy for the purpose (in accord with statutory requirements) of qualifying her as a teacher in the public or in the parochial schools of the state of Michigan, was not an employee within the meaning of the statutory provisions contained in the Workmen's Compensation Law of said state.

But in its facts, the case of *Thurston County Chapter, American National Red Cross* v. *Department of Labor, etc.*, (1932) 166 Wash. 488 [7 Pac. (2d) 577], more closely resembles the instant case. In the cited case it appears that Red Cross, like Volunteers of America in the instant case, is "a purely charitable organization"; that in the course of its activities Red Cross, like Volunteers of America, solicited and collected from various and sundry sources sums of money to be used in ministering to those who were destitute and in need of aid; that in pursuance of its policy in that regard, "Red Cross furnished each man performing a day's labor groceries, clothing, or medical services to the

value of $2.50''; but that the services so rendered by such applicant were performed, not directly for Red Cross, but for some local municipality ''in repairing, reconstructing and maintaining roads and streets'', etc., therein. It was held that it was not the legislative intent that charitable organizations such as Red Cross should be within the operation of the Workmen's Compensation Act. However, attention is again directed to the fact that in the cited case the work performed by the applicant was not in and about, or in connection with, the operation of the organization itself, as was the work performed by the applicant in the instant case. But with regard to the liability of a charitable corporation for damages that result from its assumed negligence in the operation of its business, it has been held that no cause of action accrues to an injured employee and that the provisions of workmen's compensation laws are inapplicable to charitable corporations, unless such laws specially so provide. (*Zoulalian* v. *New England Sanitorium, etc.,* (1918) 230 Mass. 102 [119 N. E. 686, L. R. A. 1918F, 185], and authorities there cited. See, also, *Dillon* v. *Trustees of St. Patrick's Cathedral,* (1922) 234 N. Y. 225 [137 N. E. 311].)

From a consideration of the American authorities on the subject, and especially the case of *McBurney* v. *Industrial Acc. Com., supra,* to which reference hereinbefore has been had, it becomes clear that the trend of the decisions, notwithstanding the broad general terms expressed in the various statutes by which compensation is provided, as applied to ''all'' corporations and ''public agencies'' for injuries sustained by workmen in their employ arising out of and in the course of their employment, is toward a construction that, in the exercise of their charitable functions, in effect exempts charitable corporations from the operation of the law as applied to individuals, or to the ordinary business corporations. The reasons usually assigned for such conclusion are that by common law no liability existed; that the legislature presumably was aware of such state of the law; and that in the absence of special language by virtue of which such liability was created, the presumption must be that the legislature intended that the exemption that existed at common law should not be disturbed. Moreover, that the plain intent of the Workmen's

Compensation Act was to impose upon industry alone the burden of adequately remunerating and caring for its injured employees and their dependents; and that charitable corporations or organizations whose sole aim is benevolent in its nature, purpose and effect should not be so taxed, in favor of persons receiving charitable aid or relief, even though they render some service in return therefor.

In accord with the authorities to which attention hereinbefore has been directed, it is ordered that the award of the respondent commission be and it is annulled.

Conrey, P. J., and York, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 6, 1934.