[Civ. Nos. 10220, 10221. Second Appellate District, Division One.—August 1, 1935.]

CITY OF LOS ANGELES (a Municipal Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, ALEX WOLF et al., Respondents.

COUNTY OF LOS ANGELES, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and ALEX WOLF, Respondents.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Floyd S. Sisk, Deputy City Attorney, for Petitioner City.

Everett W. Mattoon, County Counsel, and Fred M. Cross, Deputy County Counsel, for Petitioner County.

Everett A. Corten and Arthur I. Townsend for Respondents.

HOUSER, J.—In response to separate petitions filed in this court by the City of Los Angeles and by the County of Los Angeles (each under a separate number), writs of review were issued herein as to an order for award theretofore made by said respondent commission by which, in effect, one Alex Wolf was adjudged to be entitled to compensation for injuries theretofore sustained by him while engaged as an alleged employee of each of said petitioners.

Briefly stated, it appears that on a certain date, under administration of the County of Los Angeles of so-called relief funds, Wolf was constituted a "relief worker" who, in accordance with an arrangement then existing between the County of Los Angeles and the City of Los Angeles, had been assigned to "made work" in Griffith Park, which was a property then owned and maintained by said City of Los Angeles. During such employment, at a point located about one mile from the place where Wolf was performing his labor, a disastrous brush fire occurred in one of the canyons of Griffith Park. Whether at his own instance Wolf voluntarily left his place of employment to assist in extinguishing said fire, or whether he did so in response to an order given to him by a fellow relief worker who was a "straw boss" in charge of the group of which Wolf was a member, is in dispute; but the fact is clear that from no other possible authority or source did Wolf receive a direction or an order to assist in attempting to extinguish such fire. However, it was in the course of such endeavor on the part of Wolf that he sustained the injuries that formed the basis for the award made by the respondent commission to him and which award furnishes the subject-matter of the present inquiry.

Under the provisions of the Workmen's Compensation Act, as far as concerns the general question that relates to the right of a "relief worker" in the employment of a governmental agency to compensation for injuries received by him in the course of and arising out of such an employment, the leading case in this state of *McBurney* v. *Industrial Acc. Com.*, 220 Cal. 124 [30 Pac. (2d) 414], is so squarely in point to the effect that in ordinary circumstances of the nature of those here present no such right exists, that the basic question suggested by the facts herein is no longer debatable. Notwithstanding variations in the facts of the

several cases from those that appeared in the leading case, the principle announced in the latter has been followed in the following cases: *Martin* v. *Industrial Acc. Com.*, 137 Cal. App. 771 [30 Pac. (2d) 527]; *Rico* v. *Industrial Acc. Com.*, 137 Cal. App. 772 [30 Pac. (2d) 584]; *Hartford Accident etc. Co.* v. *Industrial Acc. Com.*, 139 Cal. App. 632 [34 Pac. (2d) 826]; *County of Los Angeles* v. *Industrial Acc. Com. and Hauser,* 140 Cal. App. 727, 728 [35 Pac. (2d) 1035]; *County of San Bernardino* v. *Industrial Acc. Com. and Barnes,* 1 Cal. App. (2d) 598 [37 Pac. (2d) 122]; *County of Los Angeles* v. *Industrial Acc. Com. and Jones,* 2 Cal. App. (2d) 614 [38 Pac. (2d) 828]; *City of Long Beach* v. *Industrial Acc. Com. and Evans,* 2 Cal. App. (2d) 641 [38 Pac. (2d) 850]; *County of Los Angeles* v. *Industrial Acc. Com. and Munguia,* 3 Cal. App. (2d) 754 [39 Pac. (2d) 477]; *Board of Education* v. *Industrial Acc. Com. and Stout,* 3 Cal. App. (2d) 411 [39 Pac. (2d) 521] (December 31, 1934); *State Compensation Ins. Fund* v. *Industrial Acc. Com. and Christensen,* 3 Cal. App. (2d) 532 [39 Pac. (2d) 870] (January 9, 1935). It would therefore appear to be a useless occupation on the part of this court to devote attention to that phase of the issue herein presented.

The argument presented by respondent commission in support of its award in the premises appears to be that, by reason of the assumed fact that a "straw boss", who was in charge of directing the labor of the "relief worker", ordered the latter to assist in extinguishing the fire, his services were commandeered and the character or nature of his employment was immediately thereafter changed from that of a "relief worker", with its attendant disabilities as far as any right under the provisions of the Workmen's Compensation Act to compensation for injuries received in the course of and arising out of his employment, was concerned, to that of any other person, however or by whomsoever employed, whose services as a fire fighter might have been similarly and for a like purpose requisitioned.

In considering the question thus suggested, it may be well first to devote some attention to elemental or foundational law. It is clear that the asserted right must arise either because of its recognized existence at common law, or because of some constitutional or statutory provision, or of some ordinance, by which such right is either expressly or impliedly

created, and that as a consequence the "relief worker" could have been employed only by or through some legally authorized representative of either the County of Los Angeles or the City of Los Angeles. In that regard, search of available common-law authorities has revealed nothing other than of a negligible character that will serve in a determination of the question of the asserted authority of one in a position such as was occupied by the "straw boss" in the instant case to requisition the services of any person, whether because of an existing emergency, or for any other reason. In IV Blackstone's Commentaries, page 122, various misprisions which affect the king and government, which are "generally denominated contempts or high misdemeanors", are noted; and in connection with such contempts against the king's prerogative provision appears to have been made for the punishment of a person who has refused "to assist him (the sheriff) for the good of the public; either in his councils, by advice, if called upon; or in his wars by personal service for defense of the realm, against a rebellion or invasion. . . . Under which class may be ranked the neglecting to join the *posse comitatus,* or power of the county, being thereunto required by the sheriff or justices, according to the statute 2 Hen. V, c. 8, which is a duty incumbent upon all that are fifteen years of age, under the degree of nobility, and able to travel". In I Blackstone's Commentaries, page 343, it is also said that "he (the sheriff) is also to defend his county against any of the king's enemies when they come into the land; and for this purpose, as well as for keeping the peace and pursuing felons, he may command all the people of his county to attend him; which is called the *posse comitatus,* or power of the county; and this summons every person above fifteen years old, and under the degree of a peer, is bound to attend upon warning, under pain of fine and imprisonment".

If by a liberal construction of such language it may be said to include within the implied service which the king may demand of his subject a requirement that the subject render assistance to his king in extinguishing fires that may occur within the realm, it also is equally apparent that the regal agents who possess authority to summon the subject to such a task are expressly limited to "the sheriff and justices". It therefore may not be improperly concluded that, in the

instant case, at common law the asserted agent of either the County of Los Angeles or the City of Los Angeles, to wit, the "straw boss", possessed no authority at common law to commandeer the services of any person for any reason or purpose whatsoever. It would therefore seem to follow that in this state, a right such as has been asserted to exist by the respondent commission, if it have any reality, must arise from the creative words contained either within the Constitution of this state, or of some statute or ordinance therein.

As is stated in 21 California Jurisprudence, page 872: "The powers of public officers are limited either by the Constitution or by statute, and their acts, to be valid, must find warrant in the law, either expressly or by fair implication. . . . " But as a general rule, in the exercise of powers conferred upon them, public officers may appoint agents to discharge ministerial duties. (Id., p. 881.) To the same effect, see 46 Corpus Juris, pages 1031, 1033, 1035, 1063, and authorities therein respectively cited.

A reference to the several statutes of this state in terms discloses the employment of no express language by which any officer thereof, in person (much less his accredited deputy), of either the County of Los Angeles, or of the City of Los Angeles, for the purpose of extinguishing a fire, as in the instant case, would be authorized to commandeer the services of either a "relief worker" or any other person. For example, the provisions of section 150 of the Penal Code, which relate to *"posse comitatus"*, or the power of the county, limit the exercise of such power to "any sheriff, deputy sheriff, coroner, constable, judge, or peace officer, or other officer concerned in the administration of justice"; and the subject-matter of such prerogative is confined generally to the making of arrests, or preventing a breach of the peace, or the commission of a criminal offense.

By subdivision 11, of section 384, of the same code, punishment is provided for a person who may fail "to render assistance in combating a forest fire at the summons of the state forester, deputy state forester, assistant state forester, or any state forest inspector, state ranger, or state fire warden, unless prevented from so doing by sickness or other physical disability".

By section 3345 of the Political Code it is provided: "Whenever the woods are on fire any justice of the peace,

constable, or road overseer of the township or district where the fire exists, may order as many of the inhabitants liable to road poll-tax, residing in the vicinity, as may be deemed necessary, to repair to the place of the fire and assist in extinguishing or stopping it.''

And by section 4 of the Statutes of 1919, page 262, ''power to summon help for suppression of fires'' is conferred upon the state forester, or his deputy, or an assistant state forester.

The general rule is recognized in 35 Cyc., page 1526, where, with appropriate authority therefor, it is stated that: ''In a proper case the sheriff can summon to his aid in the performance of his duty the *'posse comitatus'*, or the whole power of the county, and persons, so called upon by the sheriff are bound to aid and assist him. . . . ''

In 26 Corpus Juris, page 590, the following is noted: ''Under some statutes the fire warden may call upon any person within the town or district to aid in extinguishing a fire in fields or woods, and a person who renders such assistance or who has been ordered to the place of the fire may receive a certain compensation for his services; but a person is not entitled to such compensation where he renders his services voluntarily, *or where he renders his services at the instance of one who has no authority to order such assistance.*''

*In the Matter of Stokes*, 33 Misc. 448 [68 N. Y. Supp. 439], the reason for the rule to which reference has been had is thus stated: ''A person going to a fire can very readily see the fire warden and arrange for compensation, if his services are desired. On the other hand, if a request, express or implied, by the fire warden is not necessary a town may be subjected to great expense for unnecessary services. If people might go to a fire in any number, of their own motion, it is probable that their services would not be very systematic or valuable, and certainly a town would be subjected to burdensome liabilities.''

See, also, *Baker* v. *Warren County*, 11 Pa. Super. 170.

Assuming that no constitutional provision, or statute of this state, or county or city ordinance, other than those respectively to which reference hereinbefore has been had, has application to the situation herein involved, it becomes manifest that neither by the rules of common law, nor by statute, did the ''straw boss'' in charge of the group of men of which the ''relief worker'' was a member possess any authority to com-

mandeer the services of either Wolf, or any other person, for any reason or purpose whatsoever.

■ Notwithstanding the apparent lack of either common law, or express statutory or other authority for the purported commandeering of the "relief worker", on the part of the respondent commission it is urged that "it was the legal duty of the various workers in Griffith Park, whether unemployed relief workers or regularly employed employees, at the time this emergency fire arose to assist in controlling and extinguishing this brush fire. . . . If this applicant in [was] performing a legal duty required of him by virtue of his citizenship and the fact that he was available and cognizant of the dangers immediately present, [that] he is entitled to a status which will afford him some protection as. against any disability he may have sustained in his efforts to protect property belonging to the taxpayers in the city of Los Angeles and the county of Los Angeles and citizens and property owners adjacent to Griffith Park."

In support of its position in the matter, the respondent commission cites as authority therefor the cases of *County of Monterey* v. *Industrial Acc. Com.*, 199 Cal. 221 [248 Pac. 912, 47 A. L. R. 359], and *Village of West Salem* v. *Industrial Commission*, 162 Wis. 57 [155 N. W. 929, L. R. A. 1918C, 1077]. ■ In addition to such authorities, certain precedents in rulings theretofore made by the respondent commission are cited. But manifestly, such latter precedents merely record the position of the respondent commission with reference to cases theretofore decided by it only, and cannot be regarded as authorities as far as this court is concerned. Moreover, the facts of such cases considered, each of them is clearly distinguishable from the facts herein. Likewise in the case of *County of Monterey* v. *Industrial Acc. Com., supra,* where it appeared that for the purpose of assisting him in making an arrest of certain persons, the sheriff of the county had commandeered the services of an individual who in the course of rendering such services sustained certain injuries which later caused his death, and which action on the part of the sheriff would appear to have been authorized by the express provisions of section 150 of the Penal Code, to which reference hereinbefore has been had. And the other case, to which the respondent commission has referred, for similar reasons is inapplicable to the facts of the instant case.

From the foregoing it is concluded that since neither by any rule at common law, nor by any constitutional provision, or express statute, or ordinance, nor by implication derivable therefrom, was the "straw boss" authorized to commandeer the services of the "relief worker", the latter may not be legally considered as having been an employee of either of the petitioners herein; and consequently that in law he was not entitled to be compensated by either of his so-called employers for the damages which he sustained by reason of the injuries of which he here complains.

The award is annulled.

Conrey, P. J., and York, J., concurred.