JANVIER, Judge.
This is a suit for workmen’s compensation brought under the Louisiana Compensation Law by a member of an incorporated church organization against the church and its liability insurance carrier. The plaintiff, Samuel David Meyers, is a minister employed by the Southwest Regional Conference Association of Seventh Day Adventists, an incorporated body organized under the laws of the State of Texas “for the purpose of supporting public worship and benevolent, charitable, .educational and missionary undertakings.”
The plaintiff was assigned a parish by the. President of the conference and according to the said President he was expected to look after the parish in which he served, “conducting services three times a week,” and holding other meetings. In addition to preaching at these services and meetings, he “was responsible for the financial program of' the church” and was required to visit among the parishioners and, at times, was. called upon to serve voluntarily in church-school activities:
*596 He owned an automobile which' he used in making- his calls and the defendant organization, in addition to his- salary which was sufficient to entitle him to maximum compensation if he was entitled to compensation, made him an allowance for expenses growing out of the use of his automobile, and it also paid for liability insurance to protect him against- loss as a result of liability which might result from the use of his car. The record shows that he actually used his car extensively, covering approximately 1,500 miles each month.
During the month of December, 1952, the plaintiff was ordered by the defendant church corporation to accompany another minister of the.church, to a conference to be held in Dallas, Texas. The trip was to be made in an automobile of another minister, Reverend Jeter E. Cox. In the course of the trip, near Colfax, Louisiana, the car in which he and the Reverend Cox were traveling came into collision with another automobile and both he and the Reverend Cox sustained serious physical injuries. This suit for compensation is the result of those physical injuries.
Plaintiff claims to have been totally and permanently disabled, and he prays for judgment against the church corporation, and against its liability insurance carrier, the Indemnity Insurance Company of North America, in the sum of $30 per week for 400 weeks, together with the maximum allowance for hospital and medical expenses.
The defendants, the church corporation and the insurer, admitted the employment and the occurrence of the accident, but they denied liability for compensation on several grounds. They aver that a church corporation is not a trade, business or occupation within the meaning of the Workmen’s Compensation Statute, LSA-R.S. 23:1035. They further aver that a minister’s calling is not hazardous within the contemplation of the statute and that the operation of a church is not a hazardous trade, business or occupation, even though the minister may be-required to use an automobile in conducting church work. They further aver that the Workmen’s Compensation Law should be construéd as not contemplating church corporations for the reason that if they are construed as contemplating such church organizations, they would violate the principle of separation of church and state vouchsafed by our Louisiana Constitution, LSA, in section 4 of Article 1 and by the First and Fourteenth Amendments of the Constitution of the United States.
They further aver that, as a matter of fact, the plaintiff has not been disabled and is employed by the same church corporation in work practically identical with that which he was doing prior to the accident and is receiving the same salary which he was receiving before the accident.
It appeared during the trial that the plaintiff had obtained a judgment and under it had collected $6,500 as damages from the tort-feasor who had been involved in the accident in which he sustained his injuries.
There was judgment in the Civil District Court for the Parish of Orleans in favor of plaintiff and against both defendants for $30 per week for 400 weeks and for $1,000 medical expenses, and it was provided in the judgment that the defendants should be “entitled to a credit of $6,500 against this judgment and shall not be required to make any payments hereunder until said credit is exhausted.”
From this judgment both defendants appealed suspensively, and plaintiff answered the appeal praying that the judgment be amended by the elimination of the credit allowed- to defendants.
At the outset we are impressed with the suggestion that it could not have been the intention of the framers of our compensation statute and of its various amendments that its provisions .should be held to apply to such a church corporation. , Prior to the enactment of compensation statutes tremendous economic losses were sustained, sometimes by employees and sometimes by employers as a result of occupational accidents. It was realized that however careful employees might be and however great might be the safeguards thrown around hazardous occupations, nevertheless accidents were *597 bound to occur with, in each case, an economic loss to the employee if he could not recover in tort, ór' to 'the employer if the employee could persuade a court or a jury that-the accident had occurred without fault on his part. It was felt that súch losses resulted in unavoidable costs in hazardous businesses and that they should be recognized as a necessary cost in’the conducting of such businesses. As such they could be passed on to the consuming public as a part of the cost by the addition of some'predetermined amount for insurance, and, that, as a result, the1 injured- employees, whether at fault or not, would be relieved in all cases of the necessity of providing themselves with the. necessary costs of living during disability.
The thought which we have in mind is well expressed by Professor Wex Malone in his work “Louisiana Workmen’s Compensation,” at page 34:
“Workmen’s Compensation rests upon the sound economic principle that those persons who enjoy the product of a business — whether it be in the form of goods or services — should ultimately bear the cost of the injuries or deaths that are incident to the manufacture, preparation and distribution of the product. Certainly this has always been true with reference to the capital structures and the machinery and equipment necessary to1 process and distribute all industrial products. -Expected wear and tear and breakage of every sort is anticipated by the producer and this cost is . considered when !he fixes the price of his commodity or service. This is done without any reference to-whether or not the loss should be regarded as the result of fault bn 'the part of the management. If the cost is a predictable ' incident of the operation, sound business judgment demands that it be included as an element of the price.' The same should be true of the human wreckage that is involved in production.
* * * * , * * ,-
“Under this approach the' element of personal fault either disappears entirely or is subordinated to broader economic' considerations; The émployeff absorbs the cost of accident loss'bnly initially; it is expected that this cost' will eventually pass down the stream of commerce in the form of increased price until it is spread in dilution among the ultimate consumers. So .long as each competing unit in a, given industry, is uniformly affected, no producer can gaip any substantial competitive,advantage or suffer any appreciable, loss by reason of the general adoption,of. the compensation principle.
* * ■ . *■ ■ *
“It has previously been pointed out that the ultimate object of workmen’s compensation is to pass the risk of employee injury on to the consumers or users of the product .of the enterprise -- for whom the employee has labored. In order to effect this ¡distribution of acci...-.dent cost the risk is-shifted initially . from the employee to .the' enter- - prise. * * ■ *■”
With these .thoughts in mind we believe -it self-evident .that, in the. case of cffurches generally and, to be specific, in the case, of this particular .church, it cannot be said that they constitute businesses, trades or occupations which were in the contemplation of the framers of our statute.
We have been shown ho authprity which is directly in point and therefore find ourselves called upon, without the assistance of prior adjudications, to determine whether a church is a trade, business - or' occupation which is contemplated by our Workmen’s Compensation,-Statute. - ■ ."
Counsel for plaintiff' concede that a church is neither’ a trade nor a business, but they vehemently insist that a church is an' occupation, of at least that the minister who sérves the church is engaged in ari occupation, and they adopt the definition of the wofd “occupation”' which appears in the brief of counsel for defendants as follows;
“Occupation — :‘A trade; ' employment; profession; business; means of livelihood’ * '* ' * ‘Occupation’ as *598 commonly understood, signifies the principal business of one’s life, employment, calling or trade. * * * ” See Black’s Law Dictionary, 3d Edition, p. 1280.
It must be conceded, of course, that decisions in other jurisdictions are not controlling here, and it must further be conceded that the cases cited by counsel for defendants as evidencing views in other jurisdictions are to some extent based on facts and on statutes which are not the same as those which govern the case at bár. Nevertheless — it is important to note that, in numerous instances, courts in other jurisdictions have held that compensation statutes are not applicable to churches or similar organizations and institutions.
In Dillon v. Trustees of St. Patrick’s Cathedral, 234 N.Y. 225, 137 N.E. 311, the Court considered the status of a religious corporation which owns and uses a tract of land for a cemetery and devotes the-proceeds of the sale of burial privileges to the church. The Court held that such an organization is not engaged in a trade, business or occupation within the contemplation of the Workmen’s Compensation Statute of the State of New York. Workmen’s Com--pensation Law, McKinney’s Consol.Laws, c. 67, § 1 et seq.
In Hartford Accident & Indemnity Co. v. Department of Industrial Relations, 139 Cal.App. 632, 34 P.2d 826, 830, appears the following:
“The plain intent of the' Workmen’s Compensation Act was to impose upon. industry alone the burden of adequately remunerating and caring for its injured employees and their dependents; and that charitable corporations or organizations .whose sole ,aim is benevolent in its nature, purpose, and effect. should not be so taxed, in fa.vor of persons receiving charitable aid or relief, even though they render some service in return therefor.”
In the case of Caughman v. Columbia Y. M. C. A., 212 S.C. 337, 47 S.E. 788, involving the Young Men’s Christian Association, the Supreme Court of South Carolina recognized that the purpose of workmen’s compensation statutes is to place the economic burden of accidents on industry and held that such .statutes have-no application to such organizations as the Young Men’s Christian Association.
if our views on this point are not well founded, still we think that plaintiff is not entitled to compensation because there is nothing in the activities of the church organization which can be characterized as the conducting of a hazardous trade, business or occupation.
The record, we' think, shows that none of the activities of the church can be classified as hazardous, except for the' possible fact- that the ministers, in conducting their work, find it necessary to use automobiles in visiting their parishioners and in going from place to place- in performing their ministerial duties.
It is true that it has been held that an automobile is a machine or a mechanical device and that any' one who operates or who is necessarily brought into contact with one, which is used as a- part of the business of the employer, is engaged in a hazardous operation and protected by the Workmen’s Compensation Statute. However, it is not the work of any particular- employee which determines whether the employer is engaged in a hazardous business. The character of operations conducted by the employer and not the particular work done by the employee determines this question. We discussed this at length in Franz v. Sun Indemnity Co. of New York, La.App., 7 So.2d 636, 639, as follows:
“ * * * It is well settled that it is not the work performed by the particular employee which determines whether the employer is engaged in an occupation contemplated by the statute. Therefore a consideration of the duties, of a particular employee are important only to the extent that those duties may indicate the nature of the business in which the master or employer is engaged; for whatever may be the duties. *599 of the employee, the act has no application unless the trade, business or occupation of. the employer brings him under it. The statute itself so provides 'Every person performing services arising out of and incidental to his employment in the course of his employer’s trade, business or-occupation in-the following hazardous tradés, businesses and occupations’ * * *. Thus the fact alone that McMahon drove an automobile or1 assisted in loading or unloading one is important only if the operation of automobiles was so necessary a part of the business of the employer as to permit it to be said that the employer was engaged in the operation of automobiles.”
In a modern undertaking or mortuary establishment the use of' motor vehicles is so essential that it must be 'conceded that the business depends upon the use of such vehicles and that consequently the employer is engaged in a hazardous occupation and all employees who come-into contact .with the automobiles or with other hazardous features of the business are within the protection of the compensation statutes.
However, it may well'be that in some businesses or occupations,- though automo-: biles are on occasions .used in transporting employees from one place to another, it is not proper to say that the use of the automobiles constitutes an essential feature of the business of the employer. In such casé the mere fact that an automobile may, on occasion, be used to transport an employeé from one place tó another does not make it proper to say that the business itself is hazardous. This was the situation which confronted the Supreme Court in Brownfield v. Southern Amusement Co., Inc., 196 La. 73, 198 So. 656, 661. There the Supreme Court held that the employee was not within the protection of the compensation statute although she was required to use an automobile on occasions. The Court said:
“We think the doctrine that was first applied by the Court to employments in which automobiles were either used, maintained, sold, or operated, should be. limited .to proper cases and should, not be held to apply where the us.e or maintenance of the automobile is so remotely connected with the .employer’s business as to make the risk from its operation negligible. There is some risk connected with every employment. It is inconceivable that k salesman in a mercantile’ establishment, a stenographer in a professional office, or one of the numerous classes of employees engaged in clerical capacities, who might occasionally use an automobile in the performance of an errand for his employer, would come within the terms of the Workmen’s Compensation Act and that the employer would be obligated to compensate an employee who is injured in discharging his work in the establishment or office itself. ,,If the interpretation of the Workmen’s Compensation Act can be extended beyond the extremely liberal interpretation given to it in the case of Byas v. Hotel Bentley, supra [157 La. 1030, 103 So. 303], there-would be no such thing as an employment not covered by the provisions of the statute. -Every injured employee, or his dependents when the injury is fatal, would be entitled to compensation. Thus workmen’s compensation imposed by statute, in substance, would become the equivalent- fo.r life and accident insurance founded on contract.”
If the transportation of' the employee from-'one place-to another is not a part of the carrying out of the business'or the conducting of the occupation, there is no coverage under the compensation statute. The work of the employee is not being conducted while he is being transported and in this there is an essential difference between this case and the facts which were presented in Franz v. Sun Indemnity Co., supra, for there the very business itself depended on the operation of vehicles.
In Tregre v. Kratzer, 148 So. 271, 274, the Court of Appeal for the First Circuit held that the employees were not within the *600 protection of the compensation statute although they were transported to and from their work in motor vehicles. The Court said:
“The trouble with plaintiffs, in this case, is that they were not running these trucks as a trade, business, or occupation, but used them, according to the allegations of the petition, to transport these employees from their places of residence to the rice fields where they were engaged in cutting rice. Evidently, they were taken there as farm hands, and as before explained, could not, as such, claim any compensation from plaintiffs.”
Our conclusion is that the defendant corporation is not engaged in a hazardous occupation within the contemplation of the Workmen’s Compensation Statute and that the framers of the statute did not intend that church corporations should be included within the contemplation of the statute and that the statute does not by' its express terms or by inference include such church corporations.
It is not necessary that we 'discuss the other contentions of the defendants, though it is interesting to note that the plaintiff is now engaged by the same church corporation at the same salary and doing practically the same work which he was doing before the accident.
The judgment appealed from is annulled, avoided and reversed and plaintiff’s suit is dismissed at his cost..
Reversed,